J.T. BLACKMON, M.D. *v.* James LANGLEY

87-108 737 S.W.2d 455

Supreme Court of Arkansas
Opinion delivered October 12, 1987

*Atchley, Russell, Waldrop & Hlavinka,* by: *Victor Hlavinka,* for appellant.

*Perroni, Rauls & Looney, P.A.,* by: *Samuel A. Perroni*; and *Wilson, Engstrom, Corum & Dudley,* by: *William R. Wilson, Jr.,* for appellee.

DAVID NEWBERN, Justice. This is a medical malpractice case. The appellant, Dr. J.T. Blackmon, contends it was error to submit to the jury the question whether his alleged negligence in failing to inform the appellee, James Langley, of an x-ray showing lung cancer was the proximate cause of Mr. Langley's alleged pain, suffering, mental anguish, lost wages, and lost earning capacity. Dr. Blackmon's argument is that because the evidence showed that Mr. Langley had less than a 50% chance of survival at the time the alleged negligence occurred, his alleged negligence could not be regarded as the proximate cause of injury to Mr. Langley. We hold it was proper to submit the issue to the jury, and thus we affirm the judgment based on the verdict in favor of Langley.

When Dr. Blackmon examined Mr. Langley in September, 1984, for an unrelated complaint, a chest x-ray was done. It showed a mass of three by four centimeters in Langley's left lung. Mr. Langley alleged, and testified, that Dr. Blackmon said nothing to him about the mass. Dr. Blackmon contended that he had told Mr. Langley about it and had advised him that he needed additional diagnostic testing because of it to determine what the mass was.

In April, 1985, Mr. Langley sought treatment from another physician, and it was determined that the mass had trebled in size since the September, 1984, x-ray was made. It was malignant, and although surgery was performed, it is agreed that Langley has little chance of survival. The cancer has metastisized and spread to the brain.

In his complaint, Mr. Langley sought damages for pain, suffering, and mental anguish, as well as "additional" medical expense, loss of earnings, reduction in life expectancy, and a disfiguring injury. He presented expert testimony by a Dr. Desantis, the essence of which was that Mr. Langley's chance of survival for a five-year period was 40% in September, 1984, and that it was reduced to 18% in April of 1985. Dr. Blackmon presented other expert testimony which buttressed the conclusion that Mr. Langley had a less than 50% chance of survival even in September, 1984.

Mr. Langley testified to the fact that, because of his inability to work since learning of his diagnosis, he had to give up his

business enterprises, and is now receiving a disability allowance. He told of vomiting "all night," for days and weeks at a time. Mrs. Langley testified that she had been with her husband through his surgery and chemotherapy experiences and that her husband had appeared to be in "tremendous pain."

*Lost chance*

Dr. Blackmon cites Section 433B of the Restatement (Second) of Torts, Comment (b), which says it is essential to recovery that there be ". . . evidence from which reasonable men may conclude that it is more probable that *the event* was caused by the defendant than that it was not." (Emphasis added.) He cites "lost chance" of survival cases in which the event was death, the action brought was one for wrongful death, and the courts held that, because at the time of the alleged negligence the victim had a 50% or less chance of survival, it was not probable that the death was caused by the negligence. *Cooper* v. *Sisters of Charity of Cincinnati, Inc.*, 27 Ohio St. 2d 242, 272 N.E.2d 97 (1971); *Gooding* v. *University Hospital Building, Inc.*, 445 So.2d 1015 (Fla. 1984). He then asks us to apply, by analogy, those cases to the one before us now in which the event is composed of the pain, suffering, and loss of wages of a living human being who contends this composite event was brought on because the early detection of his cancerous condition was not made known to him. Even if we agreed with the theory expressed in the *Cooper* and *Gooding* wrongful death cases, and we are not at all certain we do, we would not apply it here.

The jury was instructed, properly, that if it found that Mr. Langley's evidence showed he sustained damages due to Dr. Blackmon's negligence it should find in favor of Mr. Langley. It was instructed with the proper definition of proximate cause, and then told that if its decision were in favor of Mr. Langley it should fix an amount of money to compensate him for his injuries, pain and suffering, mental anguish, and the present value of any loss of ability to earn in the future. Then the court instructed the jury, again properly, that it could not award damages for any pain, mental anguish, disability, loss of earnings or earning capacity that ". . . have arisen because of his original ailment since Dr. Blackmon is chargeable only for the damages, if any, that naturally follow from any delay in the treatment of James

Langley's lung cancer that might have been proximately caused by negligence of Dr. Blackmon."

It is clear to us that the jury found, in accordance with these standard instructions, that Mr. Langley suffered more and lost more as a result of Dr. Blackmon's conduct than he would have suffered or lost had he known to obtain treatment for his cancer when it was discovered rather than some seven or eight months later.

Affirmed.