Stanley GILES, Administrator
of the Estate of Rosie Lee Anderson *v.*
SPARKMAN RESIDENTIAL CARE HOME, INC., *et al.*

CA 99-93                                                6 S.W.3d 140

Court of Appeals of Arkansas
Division IV
Opinion delivered December 15, 1999

*The Boyd Law Firm*, by: *Brent P. Gasper* and *Charles Phillip Boyd, Jr.*, and *Grayson, Holleman & Grayson*, for appellants.

*Laser, Wilson, Bufford & Watts, P.A.*, by: *Alfred F. Angulo, Jr.* and *Donna L. Gay*, for appellee Sparkman Residential Care Home, Inc.

*Mitchell, Williams, Selig, Gates & Woodyard P.L.L.C.*, by: *Tim E. Howell*, for appellee Raymond R. Remmel, M.D.

JOHN E. JENNINGS, Judge. On May 1, 1995, Rosie Anderson wandered away from the Sparkman Residential Care Home and was never seen alive or heard from again. On March 4, 1997, a dog brought a skull to its owner's residence that was located within a two-mile radius of the residential care facility. The skull was identified as the remains of Ms. Anderson; various bones were later discovered as well. Given the paucity of evidence, the state crime lab was unable to determine the cause of death, although it was reported that her skull had not been fractured. In this wrongful-death action against various health-care providers, it was the appellant's theory that Ms. Anderson had met her death after suffering a seizure caused by not receiving proper medication. At trial the court directed a verdict in the appellees' favor on the basis that appellant had failed to prove proximate cause because the cause of death was unknown, making it equally plausible that Ms. Anderson had expired due to natural causes or at the hand of some other third person.

On appeal, appellant contends that the trial court erred in directing a verdict and that he was entitled to recover on the lost-chance theory. We find merit in the first issue, and we reverse and remand for a new trial.

Rosie Anderson, who was age forty-nine at the time of her disappearance, was mentally ill. Her principal diagnosis was schizophrenia, but she had also been a psychogenic water drinker. She also suffered from a seizure disorder that made her subject to grand mal seizures. These conditions were regulated by a regimen of medication. There was testimony that there were times when she would do reasonably well, followed by periods of deterioration that would occur when she stopped taking her medication. Consequently, she required supervision, and over the course of her adult life she had either been in the state mental hospital, nursing homes, or in the care of her family. There was some evidence indicating that she had a tendency to wander.

On March 30, 1995, Ms. Anderson was transferred from a nursing home to the appellee Hot Spring County Medical Center for psychiatric admission because she had become violent and

uncooperative. There she came under the care of appellee, Dr. Raymond Remmel. After her condition had become stabilized, Ms. Anderson was released to the home of her sister on April 12. While there she became uncooperative and agitated and would disappear for periods of time. Her sister could not tell whether she was taking her medication, and she returned Ms. Anderson to the appellee hospital on April 19. After being stabilized, on Thursday, April 27, she was transferred to the appellee Sparkman Residential Care Home, a nonrestrictive facility that may dispense but is not authorized to administer or supervise the taking of medication. Records indicate that the day Ms. Anderson arrived she did not receive her evening or night dosages of medication but that she was offered medication the next morning. That morning, however, she suffered two seizures and was taken to the appellee hospital for treatment. She was returned to Sparkman that afternoon, and she remained confused, tired, and unable to participate in activities that weekend. Records show that her medication was dispensed on Saturday and Sunday. She disappeared sometime early Monday morning.

On the issue of proximate causation, appellant presented the testimony of psychiatrist Dr. Robert Gale. It was his opinion that Ms. Anderson could not have survived without her medication. Dr. Gale testified that, without question, Ms. Anderson would have had a seizure within thirty-six to forty-eight hours after her disappearance, based on a pattern that had been established over the past ten years. He explained that after a grand mal seizure a person is left in a confused or even comatose state that may last for a day and a half; that memory loss may occur; that such a person would be subject to injury from a fall; and that the victim may bite or swallow her tongue. He said that Ms. Anderson would not have been able to care for herself after suffering a seizure.

■ Appellant first argues that the trial court erred in ruling that he had failed to offer adequate proof of proximate causation. We agree. When considering a motion for a directed verdict made by a defendant, the plaintiff's evidence, and all reasonable inferences therefrom, are examined in the light most favorable to the plaintiff. *Arthur v. Zearley,* 337 Ark. 125, 992 S.W.2d 67 (1999). A directed-verdict motion should be granted only if the evidence would be so insubstantial as to require a jury verdict for that party to be set aside; evidence is insubstantial when it is not of sufficient force or character to compel a conclusion one way or the other, or if it does not

pass beyond mere suspicion or conjecture. *Dodson v. Charter Behav. Health Sys., Inc.*, 335 Ark. 96, 983 S.W.2d 98 (1998).

Proximate cause is defined as that which in a natural and continuous sequence, unbroken by any efficient intervening cause, produces the injury, and without which the result would not have occurred. *Union Pac. R.R. Co. v. Sharp*, 330 Ark. 174, 952 S.W.2d 658 (1997). It can, of course, be proved by either circumstantial or direct evidence. *St. Paul Fire & Marine Ins. Co. v. Brady*, 319 Ark. 301, 891 S.W.2d 351 (1995). To make a prima facie case the plaintiff must offer evidence that would tend to eliminate other causes that may fairly arise from the evidence so that the jury not be left to speculation and conjecture in deciding between two equally probable possibilities. *Id.* However, it is not necessary that the plaintiff negate entirely the possibility that the defendant's conduct was not a cause. *Hill v. Maxwell*, 247 Ark. 811, 448 S.W.2d 9 (1969); *Biddle v. Jacobs*, 116 Ark. 82, 172 S.W. 258 (1914). It is enough that the plaintiff introduce evidence from which reasonable men might conclude that it is more probable than not that the event was caused by the defendant. *Hill v. Maxwell, supra.* When there is evidence to establish a causal connection between the negligence of the defendant and the injury, it is proper for the case to go to the jury. *Dodson v. Charter Behav. Health Sys., Inc.*, 335 Ark. 96, 983 S.W.2d 98 (1998).

Appellant relies in part on *Jackson v. Pleasant Grove Health Care Center*, 980 F.2d 692 (11th Cir. 1993). There an elderly nursing home resident, who was suffering from schizophrenia, mental retardation, and hypertension, wandered away one winter morning. Her body was never found, but her death was later established under state law creating a presumption of death after a lapse of time. After a jury returned a verdict in favor of the estate, the district court granted the defendants' motion for judgment notwithstanding the verdict. On appeal, the court disagreed with the trial court's conclusion that the evidence failed to establish proximate causation as a matter of law. Instead, the court held that the facts strongly supported an inference of death by exposure based on evidence that the decedent had disappeared in January; expert testimony that she would have died from exposure after two days; and proof that the nursing home was surrounded by 3,000 acres of untamed woods. Although the precise cause of death could not be known, the appellate court was satisfied that the evidence supported an explanation for the cause of death that was sufficiently articulated so that

the jury was not permitted to engage in an unallowable degree of speculation.

■ We are persuaded by the *Jackson* court's reasoning. Appellant presented expert testimony that it was highly probable that Ms. Anderson would suffer a seizure if she did not have her medication and that the effects of the seizure would leave her vulnerable to injury, and helpless. Ms. Anderson was only forty-nine years old when she disappeared, and other than her mental illnesses and seizure disorder, she suffered from no other physical ailments. On these facts, we hold that appellant presented sufficient proof of proximate cause to have the issue submitted to the jury.

Although appellant has asked us to consider in our review a portion of Dr. Gale's testimony that was proffered but ruled inadmissible by the trial court, we decline to do so. The trial court excluded the testimony, and thus it played no part in its decision. In addition, appellant has not argued that the trial court's ruling was error.

■ Appellant also argues that it should be entitled to recover under the "lost-chance" theory, citing *Blackmon v. Langley*, 293 Ark. 286, 737 S.W.2d 455 (1987). Appellant did not ask the court for a ruling on this issue, and we do not address issues that are raised for the first time on appeal. *Sutter v. Payne*, 337 Ark 330, 989 S.W.2d 887 (1999).

■ We also note that appellee Hot Spring County Medical Center contends that it was entitled to a directed verdict because it was not negligent. The trial court's directed-verdict ruling spoke only to the issue of proximate causation; the ruling did not address the culpability, if any, of the individual defendants. In the absence of a ruling, we decline to address this issue. Moreover, the trial court directed the verdict at the conclusion of Dr. Gale's testimony after being informed that, although appellant had other witnesses to offer, none of them concerned the issue of proximate causation. Because appellant had not yet completed his case, deciding this issue would be premature.

Reversed and remanded.

PITTMAN and ROAF, JJ., agree.