James HOLT, as Administrator
of the Estate of Sheryl Holt, Deceased
*v.* Dr. Taylor Dan WAGNER

00–817                                           43 S.W.3d 128

Supreme Court of Arkansas
Opinion delivered May 10, 2001

*Floyd A. Healy*, for appellant.

*Friday, Eldredge & Clark*, by: *Fran C. Hickman* and *Jason B. Hendren*, for appellee

ROBERT L. BROWN, Justice. Appellant James Holt, as administrator of the estate of Sheryl Holt, deceased, appeals from an order of summary judgment in favor of appellee Dr. Taylor Dan Wagner. He raises one issue on appeal — that the trial court erred in granting summary judgment because there remain genuine issues of fact regarding whether this state has adopted the theory of lost chance of survival in wrongful-death cases and whether the actions of Dr. Wagner deprived Sheryl Holt of this lost chance. We affirm the order of summary judgment.

The facts are that on April 30, 1996, Sheryl Holt was a patient of Dr. Wagner, and she had elected to have Dr. Wagner perform gallbladder surgery on her. On that date, Dr. Wagner ordered a routine chest x-ray exam prior to surgery. The x-ray was performed by Dr. Donald A. Harper, and the report following the x-ray made reference to a "right apical mass, infiltrate and/or plural thickening[,]" which is an abnormal condition. It was recommended in the report that if previous x-rays were available, they be obtained for comparison purposes or if not, that a chest CT scan be performed. Neither action was taken.

On May 2, 1996, Dr. Wagner performed the gallbladder surgery on Sheryl Holt. Dr. Wagner did not recall seeing the x-ray report or communicating its findings to her. In October 1996, Mrs. Holt was diagnosed with lung cancer, and ultimately died due to that condition on February 5, 1998.

On April 28, 1998, Holt sued Dr. Wagner and alleged in the complaint that the doctor had:

> failed to utilize that degree of skill and learning ordinarily possessed and used by other members of [his] profession in good standing

engaged in the same type of practice or speciality in the locality in which the practice or in a similar locality in the following manner:

a.   Failure to provide follow-up care and/or refer for follow-up care per the x-ray report dated 4/30/96 that he received in preparation for surgery;

b.   That the Defendant was negligent in notifying Mrs. Holt of the findings so that she might seek further evaluation of the findings;

c.   Refusal and/or failure to further investigate the mandate of the x-ray reports of 4/30/96.

As a direct result of the above negligence, five months time lapsed before a diagnosis was made of lung cancer. This critical five month period allowed the cancer to grow and spread to lymph nodes causing the tumor to become inoperable and necessitating chemotherapy and radiation therapy instead.

7. As a direct and proximate result of the Defendant's negligence, the deceased was at a greater risk for continued cancer, spread of cancer, and death and other complications associated with the different treatment regime as well as the additional pain and mental anguish associated with the delay in diagnosis.

Discovery ensued, and Dr. Wagner's counsel deposed Mr. Holt's expert witness, a medical doctor named William Stein, III. In the deposition, Dr. Stein said that in his opinion, in April of 1996, Mrs. Holt's tumor was "in all likelihood ... a stage IIIA or better[,]" and that "[i]n October she was almost assuredly a IIIB[.]"[1] He later confirmed that within a reasonable degree of medical probability or certainty, "she was a IIIA or better." He also testified that it was his belief that "in April [of 1996] there was a good chance she would have been able to have been operated on for cure and in October she could not have been."

Dr. Stein went on to say that a stage IIIB squamous cell carcinoma for all practical purposes "would be inoperable" and

---

[1] According to the Lung Cancer Resource Center of the American Cancer Society's website, in stage IIIA lung cancer, surgery may be used alone to remove the cancer or in combination with radiation or chemotherapy, but in stage IIIB, cancer has spread too widely to be completely removed by surgery.

"that patient is going to die of that cancer regardless of what treatment is given." He added:

> So the worst thing would have been a IIIA. If she had been operated on appropriately for cure and given the best adjuvant therapy available, it is my opinion not that she would have had what some studies show would have been a 40 plus percent chance of survival to five years. I am going to temper that somewhat and say it's my impression she would have had approximately a 30 percent chance of being alive at five years. Because I am leaving some room on both sides. As I said before, this is a very difficult subject.

The essence of his conclusions was this:

> ATTORNEY: Okay. So if the tumor had been diagnosed and treated in April of 1996, can you say within a reasonable degree of medical certainty or probability that it is more likely than not she would have survived up to five years?
>
> STEIN: No. Because if she only had a 30 percent chance, it's not more likely than not she would have survived five years. It's more likely than not that she would have had a 30 percent probability of being alive at five years.
>
> ATTORNEY: And can you say that she would have been within the 30 percent that made it to five years?
>
> STEIN: I don't know which side she would have fallen on. It doesn't matter. For an individual patient, it's either all or none. They are alive or not. My opinion she [sic] would have had a 30 percent chance of being in that group that survived five years.
>
> ....
>
> ATTORNEY: In all fairness, I am trying to look at the best possible case scenario in the range of your opinion.
>
> STEIN: My opinion is she was more than likely a IIIA. She could have been a II. That is less likely. Had she in any way for [sic] six months earlier, I don't think the chance of survival went from 0 to 50 percent. I think the chance of survival, if found in April, would have been less than 50 percent at five years. What you are getting there is what is her chance of cure. I don't think that it was 50 percent. I don't think it was. It may have been.

As to the survival rate, given appropriate treatment, for a stage IIIB cancer, Dr. Stein testified:

> It's going to be less than five percent. As a general rule. Now, if you come up with a paper that says seven percent, I am not going to argue with that. I can come up with one that says zero. I am going to say five percent is probably way overstating it to just leave some room. I will tell you that if you have a IIIB lung cancer and you are not operated on, you are almost surely going to die of that cancer.

Following Dr. Stein's deposition, Dr. Wagner moved for summary judgment and alleged that the undisputed evidence showed that he had committed no acts of negligence which could be a proximate cause of the injuries allegedly sustained by Sheryl Holt, or her death. In his response, Mr. Holt responded that he was suing Dr. Wagner "for medical malpractice for the deceased's lost chance of survival" and Dr. Wagner had deprived Mrs. Holt "of at least a forty percent (40%) chance of survival[.]" The trial court, following a hearing, issued a letter opinion granting the summary-judgment motion. The letter stated, in pertinent part:

> As presented at the hearing on this Motion, it is undisputed that the decedent's, Sheryl Holt's, death was a result of her lung cancer. The Defendant may have committed an act of negligence in this case; but there is no evidence of any acts of negligence by Dr. Taylor Dan Wagner which could be a proximate cause of the decedent's death. The Plaintiff has stated that this is a case where the Plaintiff is asking that this court recognize a claim for "loss of chance of survival." However, this is a theory of recovery which has not been clearly established within the courts of Arkansas.

> Further, it is clear from reviewing the deposition testimony of the Plaintiff's expert, Dr. Stein, that the decedent had less than a fifty percent chance of survival at best. In fact, the Plaintiff's expert, for the most part, stated that the decedent, Sheryl Holt, most probably had a level IIIA tumor or cancer in April of 1996 and that her chance of survival was thirty percent. As a result, this Court agrees with the reasoning of the courts in *Kilpatrick vs. Bryant*, 868 S.W.2d 594 (Tenn. 1993) and in *Park Place Hospital, et al vs. The Estate of Lola Mile, et al* 909 S.W.2d 508 (Texas 1995); and therefore concludes that Plaintiff's cause of action herein should be dismissed.

An order granting summary judgment was entered on May 8, 2000, and stated that "there is no evidence of any acts of negligence by

the defendant which could be a proximate cause of the decedent's death."

Mr. Holt's sole issue on appeal is whether the trial court erred in granting summary judgment in light of the lost-chance-of-survival doctrine. Mr. Holt contends that summary judgment was granted in favor of Dr. Wagner because Dr. Stein gave Mrs. Holt less than a fifty percent chance of survival in April 1996. Mr. Holt asserts, however, that Dr. Wagner offered no expert testimony that his negligence did not cause Mrs. Holt a chance of survival. He argues that this court has entertained the doctrine of lost chance and cites us to one case in support of his position, which is *Blackmon v. Langley*, 293 Ark. 286, 737 S.W.2d 455 (1987). He concludes that Dr. Wagner did indeed cause Mrs. Holt a lost chance of survival, "whether it be 1% or 49%."

■ We disagree with Holt's insinuation that this court adopted the doctrine of lost chance of survival in *Blackmon v. Langley, supra.* The *Blackmon* case concerned a cause of action for medical malpractice and involved a patient who had sued for damages based on pain and suffering, lost wages, lost earning capacity, and mental anguish, and who was alive at the time of the lawsuit and trial. We held that the issue of proximate cause was appropriately submitted to the jury for resolution and for determination of damages. What we did in *Blackmon* is a far cry from recognizing a new cause of action in wrongful-death cases for lost chance of survival.

We further take note of Dr. Wagner's reliance on *Ford v. St. Paul Fire & Marine Ins. Co.*, 339 Ark. 434, 5 S.W.3d 460 (1999). The *Ford* case involved a wrongful-death action brought by two sons on behalf of their deceased father against various medical care providers. One issue raised was that the delay in performing surgery which led to a fatal, ruptured aneurysm constituted a "lost chance" for purposes of medical malpractice. We affirmed the trial court's order of summary judgment in favor of the appellees because there was no expert testimony connecting the delay and the patient's death. We said: "Absent a showing of proximate cause, we do not decide the question of the applicability of the 'lost chance' doctrine." *Ford*, 339 Ark at 435, 5 S.W.3d at 462. Though Dr. Wagner relied heavily on the *Ford* case in his appellee's brief before this court, Mr. Holt chose not respond to it in a reply brief.

■ In short, Mr. Holt asks this court to recognize a novel theory of tort recovery — the lost chance of survival — but provides us with no citation of authority or convincing argument for

doing so. This court has said time and again that we will not do research for an appellant and will affirm a trial court's decision when the appellant's argument is not supported by legal authority or convincing argument. *See, e.g., Judicial Discipline & Disab. Comm'n v. Thompson*, 341 Ark. 253, 16 S.W.3d 212 (2000); *Ellis v. Price*, 337 Ark. 542, 990 S.W.2d 543 (1999); *Farm Bureau Policy Holders v. Farm Bureau Mut. Ins. Co. of Ark., Inc.*, 335 Ark. 285, 984 S.W.2d 6 (1998). Accordingly, we affirm the summary judgment.

■ We recognize that lost chance of survival is a complex legal theory that has taken various shapes and forms in other states. We are not closing the door to the future adoption of one of the versions of lost chance of survival. Indeed, in *Ford v. St. Paul Fire & Marine Ins. Co., supra*, we came close to adopting the traditional rule regarding lost chance of survival, without couching our holding in those terms. *See, e.g., Kilpatrick v. Bryant*, 868 S.W.2d 594 (Tenn. 1993) (plaintiffs should be required to show that it is more probable than not, that is, greater than 50%, that but for defendant's negligence, plaintiff would have survived.) Suffice it to say that we will revisit the issue when it is properly presented with appropriate citation to authority and convincing argument.

Affirmed.