# United States Court of Appeals

## For the Eighth Circuit

_____

No. 16-3118

_____

Michelle Day, Administrator of the Estate and on Behalf of the Wrongful Death
Beneficiaries of James Avery Deweese Sr.; Ruth Deweese, Individually; Michelle
Day, Individually

*Plaintiffs - Appellants*

v.

United States of America

*Defendant - Appellee*

_____

Appeal from United States District Court
for the Eastern District of Arkansas - Little Rock

_____

Submitted: June 6, 2017
Filed: August 1, 2017

_____

Before LOKEN, MURPHY, and MELLOY, Circuit Judges.

_____

MELLOY, Circuit Judge.

In 2011, a radiologist with the United States Department of Veterans Affairs
("VA") failed to identify a cancerous mass in the liver of James Avery Deweese Sr.
The mass nearly doubled in size before it was finally diagnosed in 2013, and Deweese
died shortly thereafter. Asserting survival and wrongful-death claims under Arkansas

law, Deweese's family and the administrator of his estate ("Plaintiffs") filed the present action against the United States pursuant to the Federal Tort Claims Act, 28 U.S.C. § 1346(b)(1). The United States conceded that the VA radiologist provided substandard care, but it moved for summary judgment on the issue of proximate causation. The district court[1] granted the motion. After carefully reviewing the record in the light most favorable to Plaintiffs, we affirm.

## I.

Deweese was approved for home-based primary care by the Central Arkansas Veterans Healthcare System in 2009. Among other medical conditions, Deweese suffered from cirrhosis, diabetes mellitus, diabetic peripheral neuropathy, chronic kidney disease, degenerative joint disease, chronic back pain, anxiety, and depression.

In 2011, Deweese's laboratory results revealed elevated liver function. Rose Ann Hodges, an advanced practice registered nurse who led Deweese's care team, recommended that Deweese undergo a computerized tomography ("CT") scan. Deweese underwent the CT scan in October 2011 at a VA hospital in Little Rock, Arkansas. The VA radiologist who read the scan noted that Deweese's cirrhosis was stable, but identified nothing further.

Nearly two years later, on July 7, 2013, Deweese presented to the emergency room complaining of increased and painful urination, incontinence, and suprapubic pain. His wife also reported disorientation, confusion, and slurred speech. On suspicion of hyperammonemia, Deweese was admitted to the hospital for further testing. An ultrasound on July 8 revealed a suspicious mass in Deweese's liver, and a CT scan on July 12 revealed that the mass measured 11.8 x 9 x 12.6 centimeters in

---

[1] The Honorable Kristine G. Baker, United States District Judge for the Eastern District of Arkansas.

size. This CT scan was subsequently compared to the CT scan from 2011. Upon comparison, the radiologist noted that the mass was present in the 2011 scan and that, at that time, it had only measured 6.4 x 4.7 x 6.3 centimeters.

Deweese, too weak to receive treatment, was placed on palliative care. He died on July 22, 2013, at the age of 77. An autopsy confirmed heptocellular carcinoma, *i.e.*, cancer in Deweese's liver. The immediate cause of Deweese's death, however, was not determined because the autopsy was limited to a single organ.

Plaintiffs filed administrative claims with the VA, asserting that it negligently failed to identify Deweese's liver cancer in the 2011 CT scan. As a result of this negligence, Plaintiffs alleged, Deweese "suffered a loss of enjoyment of life over the two years between the [2011 and 2013] CT scans" and died from the liver cancer. Deweese's wife, Plaintiff Ruth Deweese, also claimed loss of consortium and companionship. The VA denied Plaintiffs' administrative claims.

Renewing their allegations, Plaintiffs filed the present action against the United States. The United States conceded before the district court that the VA radiologist was negligent in reading the 2011 scan. However, in moving for summary judgment, the United States argued that Plaintiffs presented insufficient evidence that the VA's negligence was the proximate cause of Deweese's death.

The summary-judgment record contains the following evidence. First, Plaintiffs offered deposition testimony regarding the possibility Deweese might have received a liver transplant had the cancer been detected in 2011. Plaintiffs' expert Dr. Frederick Bentley, a surgeon trained in liver transplants, testified that not all patients are eligible for transplants because donor livers are limited. According to Dr. Bentley, Deweese would not have been eligible to be placed on the national list for a transplant because, on the 2011 CT scan, the mass in his liver exceeded 5 centimeters in dimension. Plaintiffs' expert Dr. James Stark, a professor of internal

medicine who teaches oncology, testified that "[w]e don't know" whether Deweese would have received a liver transplant.

Second, Plaintiffs offered deposition testimony regarding the possibility the tumor could have been surgically removed through liver resection in 2011. Dr. Bentley opined that Deweese, like most patients with liver cancer, would not have tolerated the physiological stress of resection. To support this opinion, Dr. Bentley cited evidence that Deweese had portal hypertension, which makes resection surgeries "very risky" because of blood loss, as well as Deweese's "functional status and comorbidities." Dr. Stark opined there was a 30% chance that liver resection would have cured Deweese's cancer.

Third, Plaintiffs offered deposition testimony from Dr. Bentley regarding non-curative treatments that could have extended Deweese's life. In some studies, Dr. Bentley testified, the median patient receiving a particular treatment lived for 28 months; Deweese, by contrast, lived approximately 21 months after the 2011 CT scan. Nevertheless, Dr. Bentley could not say whether Deweese would have fallen above or below the median.

Finally, Plaintiffs offered deposition testimony regarding pain damages. According to Nurse Hodges, Deweese consistently reported his pain to be a seven-out-of-ten in the years the home-based care team visited him. A seven, she testified, is "pretty high." Nurse Hodges continued: "But he's laughing and he's joking and carrying on every visit; not the typical seven you would think." Nurse Hodges also testified that Deweese complained of "generalized abdominal tenderness." She stated, however, that Deweese "didn't complain of any pain without palpating," *i.e.*, compressing, his abdomen. She testified that "sometimes his pain would be up here [indicating]. Sometimes—his little belly pain, when you palpate, would be down here [indicating]. Sometimes it would be all over, just non-specific." (alterations in original). Nurse Hodges did not specify when Deweese first began complaining of

-4-

abdominal tenderness, but she did testify that his pain reports did not change from 2011 to 2013.

The United States's expert Dr. Lawrence Lessin, a former cancer institute director, testified that the growth of a liver tumor "can" produce pain in patients. Dr. Lessin also noted that Deweese was "never on strong anodyne or pain medications." If Deweese had in fact been experiencing pain from the liver cancer, Dr. Lessin testified, Deweese could have been placed on a variety of pain management protocols that "could have significantly reduced [his] pain." Dr. Lessin, however, testified that "[s]ome [liver cancer] patients . . . have no symptoms. It can be a silent tumor." Further, like Nurse Hodges, Dr. Lessin noted the inconsistency between Deweese's pain reports to the care team and his demeanor. Because of this inconsistency, Dr. Lessin was not certain "whether [Deweese] was really experiencing pain at [a high] level or not . . . . [T]hat would have to be evaluated by a pain expert."

After considering the foregoing evidence, the district court granted summary judgment to the United States. The district court concluded there was insufficient evidence that Deweese would have survived past July 2013 had the VA properly read his 2011 CT scan. The district court also concluded there was insufficient evidence regarding any pain damages. Plaintiffs now appeal.

II.

"We review a district court's grant of summary judgment de novo and may affirm on any basis supported by the record." Allen v. United States, 590 F.3d 541, 544 (8th Cir. 2009). In so doing, we "view[ ] all evidence and draw[ ] all reasonable inferences in the light most favorable to the nonmoving party." Helmig v. Fowler, 828 F.3d 755, 760 (8th Cir. 2016). "Summary judgment is appropriate 'if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" Id. (quoting Fed. R. Civ. P. 56(a)).

In the present case, Arkansas substantive law controls. See Chapa v. United States, 497 F.3d 883, 887 n.2 (8th Cir. 2007) ("When a plaintiff brings a claim against the United States under the Federal Tort Claims Act, the controlling law is that of the state in which the act or omission occurred."). Specifically, Plaintiffs assert survival claims for medical malpractice. Ark. Code Ann. §§ 16-62-101, 16-114-206(a). They also assert wrongful-death claims. Id. § 16-62-102. We consider their claims in turn.

A.

Under Arkansas medical-malpractice law, a plaintiff must prove through expert medical testimony that the defendant's negligence was the proximate cause of the injured person's damages. Id. § 16-114-206(a)(3). A medical expert, in other words, must testify that the damages "would not otherwise have occurred" without the defendant's negligence. Id. But "[i]t is not enough for an expert to opine that there was negligence that was the proximate cause of the alleged damages. The opinion must be stated within a reasonable degree of medical certainty or probability." Young v. Gastro-Intestinal Ctr., Inc., 205 S.W.3d 741, 745 (Ark. 2005) (citation omitted).

Plaintiffs argue that, but for the VA's failure to detect Deweese's cancer in 2011, Deweese could have received non-curative treatments to extend his life. Dr. Bentley, however, did not opine to a reasonable degree of medical certainty or probability that *Deweese's* life would have been extended by such treatments. Rather, Dr. Bentley testified that the *median patient* receiving a certain treatment could expect to live longer (28 months) than Deweese lived (21 months). Dr. Bentley explicitly refused to say whether Deweese would have fallen above or below this median. Outside the median, he testified, patients may live as short as 18 months or as long as 36 months. While Dr. Bentley's testimony supports the possibility that Deweese could have lived longer with non-curative treatment, "mere possibilities" are insufficient to raise a triable issue of fact. See Flentje v. First Nat'l Bank of Wynne, 11 S.W.3d 531, 538 (Ark. 2000).

Plaintiffs also note that, according to Dr. Stark, Deweese would have had a 30% chance of curing his cancer through liver resection in 2011. Plaintiffs argue the United States should be liable for this lost chance of survival. While the Arkansas Supreme Court has not explicitly adopted the lost-chance-of-survival doctrine, it has suggested it would adopt the "traditional" version of that doctrine. See Holt ex rel. Estate of Holt v. Wagner, 43 S.W.3d 128, 132 (Ark. 2001). Under the traditional rule, a defendant is liable only if there was a "greater than 50% [chance], that but for defendant's negligence, plaintiff would have survived." Id. (citation omitted). The best authority from Arkansas therefore suggests that the loss of a 30% chance is insufficient to trigger liability. This is dispositive of Plaintiffs' lost-chance arguments. See Adams v. Toyota Motor Corp., 859 F.3d 499, 515 (8th Cir. 2017) ("[W]e must try to predict 'how the state's highest court would rule if faced with the same question.'" (quoting Marvin Lumber & Cedar Co. v. PPG Indus., Inc., 401 F.3d 901, 917–18 (8th Cir. 2005))).

Finally, Plaintiffs argue that a genuine dispute of material fact precludes summary judgment as to pain damages. We disagree. Dr. Lessin testified that tumor growth in a liver "can" cause pain, but he also testified that liver tumor growth can be "silent" and asymptomatic in some patients. Dr. Lessin further testified that a pain expert would need to evaluate Deweese's case. And, to the extent he stated that Deweese could have received pain treatments, Dr. Lessin qualified this assertion by stating that such treatments would have "depend[ed] on the etiology," or cause, of his pain. Dr. Lessin did not testify to a reasonable degree of medical certainty that Deweese's liver cancer, as opposed to one of his many other ailments, caused any pain. See Young, 205 S.W.3d at 745. Additionally, Nurse Hodges testified that Deweese's abdominal pain would sometimes be "up here," would sometimes be "down here," and would sometimes be "all over, just non-specific." She also testified that Deweese made "no new complaints of pain" between 2011 and 2013. Thus, while it is certainly possible Deweese experienced pain as a result of the liver cancer, the evidence in the record is insufficient to raise a triable issue of fact as to whether

any liver cancer treatment would have alleviated any of Deweese's pain.  See Ark. Code Ann. § 16-114-206(a)(3) (expert medical testimony must establish that injuries "would not otherwise have occurred" without defendant's negligence).[2]

B.

Plaintiffs argue that, even if the district court properly granted summary judgment on their medical-malpractice claims, the district court erred in granting summary judgment on their wrongful-death claims.  According to Plaintiffs, Arkansas wrongful-death actions are subject to a less demanding standard of proximate causation.  Under Arkansas law, however, wrongful-death liability only attaches when the defendant's negligence "would have entitled the party injured to maintain an action and recover damages in respect thereof if death had not ensued."  Ark. Code Ann. § 16-62-102(a)(1).  Wrongful-death actions, in other words, are derivative of the underlying tort committed against the decedent.  Estate of Hull v. Union Pac. R.R. Co., 141 S.W.3d 356, 359 & n.3 (Ark. 2004).  The baseline standard for liability thus remains the same in survival and wrongful-death actions.  Because the medical-malpractice claims fail in the present case, so too must the wrongful-death claims.  See Brown v. Pine Bluff Nursing Home, 199 S.W.3d 45, 48 (Ark. 2004) ("[W]here the underlying tort action is no longer preserved, the wrongful death action is barred as well."); Hull, 141 S.W.3d at 359–60 (upholding dismissal of wrongful-death action where the decedent settled with the defendant as to the underlying negligence before death).

---

[2] Plaintiffs contend the district court improperly reached the issue of pain damages.  Plaintiffs, nonetheless, raised the issue in their opposition to summary judgment, and they do not suggest they were precluded from introducing any additional evidence or argument before the district court.  We thus conclude the district court did not err in reaching the issue.

## III.

The VA failed to deliver the standard of care that Deweese deserved. However, because the evidence presented is insufficient to raise a triable issue of fact as to whether the VA's negligence proximately caused Plaintiffs' damages, we must affirm the judgment of the district court.[3]

_____

---

[3] Plaintiffs also allege the VA failed to properly treat Deweese's Hepatitis C. Like the district court, we conclude this allegation was not properly presented in an administrative claim. See 28 U.S.C. § 2675(a). Accordingly, we lack jurisdiction under the Federal Tort Claims Act to consider it. See Mader v. United States, 654 F.3d 794, 807–08 (8th Cir. 2011) (en banc).