Millard C. CROFT and Milus R. CROFT
*v.* George CROFT

CA 82-317                                    648 S.W.2d 511

Court of Appeals of Arkansas
Opinion delivered March 23, 1983

*Mitchell, Wiliams & Selig,* by: *Debra K. Hutchens* and *Jean D. Stockburger,* for appellants.

*Mahony & Yocum,* by: *Michael F. Mahony,* for appellee.

DONALD L. CORBIN, Judge. Appellants, Millard C. Croft and Milus R. Croft, filed an action in the Probate Court of Calhoun County seeking a nunc pro tunc order reflecting that Lena Williams was their adoptive mother. The probate judge entered an order finding that there was no mistake, omission, or oversight which would justify the entry of an order nunc pro tunc and further found that appellants failed to meet the burden of proof necessary to reform the previous order of adoption. Appellants bring this appeal alleging the court erred in not entering the nunc pro tunc order. We find no error and affirm.

In 1925, Stella Croft, a widow, died leaving two small children, Millard Croft, age 12 and Milus Croft, age 9. Stella

Croft's husband, John Croft, had predeceased her by several years. Arrangements were made for appellants to live with their aunt, Lena Williams, who was a sister of the appellants' deceased father, and who was married to A. S. Williams. On January 14, 1925, A. S. Williams filed an exparte petition to adopt appellants. Their grandfather, I. M. Garrett, consented to the adoption by A. S. Williams.

On February 2, 1925, an order was entered declaring appellants to be adopted by the petitioner, A. S. Williams. The petition did not request that appellants be adopted by Lena Williams and did not refer to her other than to state the fact that she was the natural aunt of appellants and the wife of petitioner. The order only referred to the adoption of appellants by A. S. Williams. It was noted in the handwriting of the judge on the outside of the petition that A. S. Williams, petitioner, was granted adoption of the minors.

On June 14, 1979, Lena Williams died leaving an estate of approximately $150,000.00. There were no children born to Lena Williams. After her death, appellants filed this action in the Probate Court of Calhoun County, Arkansas, seeking a nunc pro tunc order reflecting that they were the adopted children of Lena Williams and therefore her sole heirs at law. Appellee, George Croft, a brother and heir at law of Lena Williams, intervened in the action and opposed the entry of an order nunc pro tunc.

Justice McFaddin in *Mitchell and Shaw* v. *The Federal Land Bank of St. Louis, Missouri*, 206 Ark. 253, 174 S.W.2d 671 (1943), discussed the issuance of nunc pro tunc orders wherein he stated:

> Courts should be cautious in rendering *nunc pro tunc* orders and decrees. The power may be exercised upon parol testimony alone, but the evidence should be clear, decisive and unequivocal. It should be of sufficient character and weight to overcome the written memorial. (cites omitted)
>
> At all events, the making or refusing of the order rested in the sound discretion of the lower court. (cites

omitted); and on appeal, we will not reverse the action of the lower court in refusing to make the order *nunc pro tunc* unless there was either a clear abuse of discretion, or no substantial legal evidence to support the ruling of the lower court. In Freeman on Judgments (5th Ed.), § 136, it is stated: In considering the sufficiency of the evidence to sustain an order directing or refusing to direct a *nunc pro tunc* entry, an appellate court will follow the usual rule governing review of questions of fact and will not disturb the ruling below if it is sustained by any substantial evidence.

It should be noted that the above quoted passage from the *Mitchell* decision involved a different standard of review under the old rules of civil procedure in Arkansas, whereas today the standard of review is that found in ARCP, Rule 52.

There is nothing in the original record showing that Lena Williams intended to be a party to the original adoption proceedings. It would be pure speculation on our part to find that since Lena Williams was the natural aunt of the children she did not think there was any reason for her to adopt the children but wanted her husband to adopt them as he was not a blood relation.

As to appellants' testimony that Lena Williams asked the court: "Should I sign the papers?", it would also be pure speculation for us to hold that she was asking to join in the petition for adoption. We could just as easily speculate that she was merely inquiring of the court if her signature and consent were necessary as was the grandfather's consent.

Appellants cite and rely on the case of *Newell* v. *Black*, 201 Ark. 937, 147 S.W.2d 991 (1941). In the *Newell* case, the original adoption petition provided in part:

My wife and I are both attached to the child, are able to maintain, educate and train the child suitable to its station in life; and now pray an order of this court adopting to us the said child, investing it with our name, and all rights appertaining to a natural child.

Clearly, the wife joined in that petition. Furthermore, the order of adoption recited that "on this day comes on to be heard the petition of C. E. Black and wife for the adoption of an orphan child . . . ." In the insant case there is no reference in the petition or order of adoption that Lena Williams joined in the adoption. In the *Newell* case, *supra,* the objection was really a technical one in that Mrs. Black had not signed the petition for adoption. In every case relied upon by appellants the wife either formally joined in the petition, *Bumpus's Estate,* 23 Dist. R. 654 (1912) or the order of adoption recited the wife had joined in, *Yates* v. *Johnston,* 370 P.2d 23 (Okla. 1962).

We affirm.

COOPER, J., not participating.