Harold L. "Bud" WARD and Linda Ward *v.* James R. WILLIAMS

02-1380                                                    118 S.W.3d 513

Supreme Court of Arkansas
Opinion delivered September 25, 2003

*Cearley Law Firm, P.A.*, by: *Robert M. Cearley, Jr.*; and *McWilliams & Turner, P.A.*, by: *Matthew J. McWilliams*, for appellants.

*Barber, McCaskill, Jones & Hale, P.A.*, by: *Michael J. Emerson*, for appellee.

R OBERT L. BROWN, Justice. The appellants, Harold L. "Bud" Ward and Linda Ward ("Wards"), appeal from a judgment in favor of the appellee, James R. Williams. At issue is an alleged oral contract for the sale of land located in Bryant. The Wards assert three points on appeal: (1) that the circuit court abdicated its fact-finding role by relying on findings made by the Court of Appeals in a previous appeal; (2) that the circuit court erred in failing to consider whether there had been a "meeting of the minds" between the parties; and (3) that there was no clear and convincing evidence of the essential terms of the contract. We disagree with the Wards' arguments and affirm the circuit court.

In November 1997, Williams filed suit against Bud Ward and Linda Ward, his wife, alleging that the Wards had entered into an oral agreement with Williams whereby Williams would purchase three tracts of land in Bryant from Bud Ward.[1] Williams stated that the terms of the agreement included a $900,000 purchase price consisting of a $300,000 down payment, payable in cash and merchandise, and a balance of $600,000 payable at eight percent interest over twenty years. The complaint further asserted that Williams had completed the payment of the $300,000 down payment as of April 30, 1997, and had also paid monthly installments on the balance of the purchase price from May 21, 1994, through September 1997. Williams claimed that the oral contract at issue was removed from the statute of frauds due to his possession and control of the land, his substantial improvements to the land, and his substantial partial payment of the purchase price.

On January 25, 1999, a bench trial was held before the circuit court at which Williams testified that he and Bud Ward agreed to the following terms, including the fact that the $300,000 down payment was to be paid in cash and merchandise:

> Our original agreement, before we amended it in November, was a $900,000 purchase price with a $300,000 down payment, and a $600,000 note to be amortized over a course of 20 years at eight

---

[1] The complaint also named Metropolitan National Bank and Buford Blackwell as parties, but they are no longer parties for purposes of this appeal.

percent. The $300,000 was to be paid in the manner in which I described up front, $25,000 cash, 25,000 in diamonds, 25,000 dollar car and 25,000 in general merchandise, with the other 200,000 to be paid in merchandise and cash within the two years. Subsequently, upon our meeting, our agreement in November of 94, we decided that I was to finish paying him in cash and because of the amount of cash that I was to get an additional year to pay the down payment, which would have extended that to three years.

Williams also testified that his possession of the property and dealing with tenants was part of the agreement, as well as repairing the property, insuring it, and paying any utilities due. Williams explained that although he had written "lease" in the memo portion of many checks to Bud Ward, he did so only because Ward asked him to do that due to problems with his ex-wife. He stated that at all times, he and Ward discussed the business transaction as a sale of the land, not as a lease. Finally, Williams testified that although he was presented three separate draft agreements by Ward regarding the property, he did not sign any of them because they did not reflect the terms of the agreement that they had reached.[2]

At the close of Williams's case, the Wards motioned the court to dismiss the case with prejudice. The circuit court granted the Wards' motion and stated in its ruling:

The problem . . . is that in order for me to require someone to specifically perform on a contract, I have to have a contract. Whether it's in writing or oral, there's got to be a contract. The essence of any contract, as you know, as well as I do, is there's got to be a meeting of the minds, and there never has been. Your client's own testimony, "If we could have ever gotten a contract that we could have agreed upon and signed." There simply is no contract. For the record, to the extent that it might appear there was one, and there was none, there was insufficient partial performance that would remove the case from the statute of frauds. But the basis of the Court's ruling is, there is no contract and never was. The case is dismissed without prejudice. . . .

---

[2] Williams also presented testimony from Jim Delgado, Senior Vice President at Metropolitan National Bank; Buford Blackwell, who leased and later purchased a portion of the property at issue during the course of this litigation; and Elizabeth Burrow, Mr. Williams's fiancée.

On January 26, 1999, an order was entered to that effect.

The matter was appealed by Williams to the Court of Appeals and the Court of Appeals reversed and remanded the case in an unpublished opinion. *See Williams v. Ward*, CA99-502 (Ark. App. Feb. 23, 2000) (*Ward I*). The Court of Appeals held that the circuit court's dismissal amounted to a directed verdict. The Court of Appeals noted that the phrase "meeting of the minds" had fallen into disfavor but determined that the evidence demonstrated that the "transaction at issue clearly had the requisite objective indicators of mutual agreement necessary to form a contract and that [Williams] established, by clear and convincing evidence, that an agreement was reached." *Ward I, supra.* The Court of Appeals also said that Williams had "established the property's purchase price, the amount of the down payment and the manner in which it would be satisfied, the amount of each monthly payment, and the term of the contract." *Ward I, supra.* Regarding removal of the oral contract from the statute of frauds, the Court of Appeals concluded that because Williams paid a substantial amount of money to Bud Ward, made improvements and repairs to the property, and secured tenants for the property, from whom he collected rent, Williams's actions were more than sufficient part performance to remove the oral contract from the statute of frauds. *See Ward I, supra.* The Court of Appeals remanded the case to the circuit court for further proceedings.

On remand, the circuit court held a second bench trial on March 14, 2001, at which the court began where it had ended following the first bench trial and allowed the Wards to present their case in response to Williams's case. Bud Ward testified that on March 25, 1994, he met with Williams, who offered him $900,000 for his land. Ward stated that Williams told him that because he could not afford to buy the land at that time, he wanted to lease it for twelve months and would begin paying a down payment at the same time. Ward also claimed that Williams told him that if he changed his mind and decided not to buy the land, he would forfeit any money paid toward the down payment. Ward insisted that he and Williams agreed that Ward "would get a written contract." Ward testified that over time he received cash, check payments, and merchandise from Williams. Ward contended that at all times he told Mr. Williams that "[t]his price is good for twelve months only."

At the close of the Wards' case, counsel for both parties made closing arguments. Following questions posed from the circuit court to both parties, the court took the matter under advisement. On May 23, 2001, the circuit court issued a letter opinion, which read in part:

> I have reviewed the proof from the hearings on January 25, 1998, and March 14, 2001, in the above referenced case as well as the plaintiff's Pre-Trial and Post Trial Briefs, the defendants' Post Trial Brief and the Opinion of the Arkansas Court of Appeals dated February 23, 2000. The Court of Appeals found that the plaintiff's proof "demonstrates that the transaction at issue clearly had the requisite objective indicators of mutual agreement necessary to form a contract and that appellant established, by clear and convincing evidence, that an agreement was reached".
>
> The question then is whether the defendants rebutted that proof sufficiently to conclude otherwise. The answer is no. Contrary to defendants' argument that the terms of the contract are not definite, the Opinion is very clear: "Appellant established the property's purchase price, the amount of the down payment and the manner in which it would be satisfied, the amount of each monthly payment, and the term of the contract". In fact, all of the defendants' contentions are contrary to the Court of Appeals' findings.
>
> Clearly, in light of the proof and the Opinion, the plaintiff should be given full credit for the $550,000.00 sale of the tract to Buford Blackwell. The contract price is paid in full, and the plaintiff is entitled to conveyance of the property by warranty deed.

In its judgment entered July 17, 2001, the circuit court made the following findings:

> 2. In or about May 1994, the parties entered into an oral contract for plaintiff's purchase of the above real property, whereby plaintiff agreed to pay $300,000.00 as a down payment (in cash and merchandise) and $600,000.00 amortized over 20 years at 8 percent interest.
>
> 3. After the oral agreement was reached, plaintiff paid substantial money to defendants, made improvements and repairs, secured

tenants, collected rents and took possession of the property. Therefore, same constitutes part performance so as to remove the contract from the statute of frauds.

4. As of on or about March 20, 1998, defendants had received more than full payment for the property; specifically, $921,008.00. Specifically, such payment was in the form of a down-payment of $315,000.00, proceeds from the sale of tract 1 to Buford Blackwell in the amount of $550,000.00 (with the consent of the parties hereto and with a portion of such proceeds satisfying a $534,000.00 mortgage of defendants with Metropolitan National Bank), reduction in the principal debt by $46,518.00 (by virtue of 40 monthly payments of $5,018.64 each) and additional reduction in principal of $9,490.00 (from monthly rental payments defendant received from Blackwell from September 1997 through the closing of sale of tract 1 in March 1998).

5. Despite full performance by plaintiff and defendants' receipt of more than the contract price, defendants are in breach of said contract because they have failed to convey title to said property by warranty deed, despite demand therefor.

The court found that specific performance was the appropriate remedy and ordered the Wards to convey title to the two remaining tracts of land to Williams immediately in fee simple absolute. A stay of that judgment was ordered by the circuit court provided that a *supersedeas* bond was posted. The bond was not posted in timely fashion, and the circuit court entered a second order vesting title to the disputed land in Williams in fee simple absolute.

The Wards appealed to the Court of Appeals, which affirmed the circuit court. *See Ward v. Williams*, 80 Ark. App. 69, 91 S.W.3d 102 (2002) (*Ward II*). The Wards then petitioned this court for review of the case, which we granted. When this court grants a petition for review following a Court of Appeals decision, we consider the matter as if the appeal had been originally filed in this court. *See, e.g., BPS, Inc. v. Parker*, 345 Ark. 381, 47 S.W.3d 858 (2001).

*I. Abdication as Factfinder*

The Wards claim as their first point that the circuit court erred by abdicating its role as the finder of fact when it deferred to *obiter dictum* in *Ward I*, and, thus, failed to decide the matter on the proof presented at trial. In support of this claim, the Wards point to the circuit court's statements in its letter opinion and contend that the statements clearly demonstrate that the circuit court adopted the findings made by the Court of Appeals in *Ward I*.

Williams responds that although the Court of Appeals may have overstepped its bounds by holding that there was an enforceable contract between the parties, the circuit court, on remand, permitted the Wards to put on their case in the second trial. The circuit court then reviewed all of the proof from both trials. Williams claims in his brief on appeal that the Wards' evidence "confirmed that there was a contract for sale, not a lease, and that they had received more than the contract price." Williams further urges that the circuit court only considered the Court of Appeals' opinion as shifting the burden of persuasion to Ward and that both the circuit court's letter opinion and judgment demonstrate that the judge considered all the evidence.

■■ This court has made it clear that it is not bound by any conclusion stated as *obiter dictum*. *See Burnette v. Perkins & Assocs.*, 343 Ark. 237, 33 S.W.3d 145 (2000). We have further held that while a decision will not be disturbed because it is law of the case, we are not bound by a conclusion stated as *obiter dictum*, even if couched in terms that imply the court reached a conclusion on a matter. *See Clemmons v. Office of Child Support Enfcm't*, 345 Ark. 330, 47 S.W.3d 227 (2001). Where discussion or comment in an opinion is not necessary to the decision reached therein, the discussion or comment is *obiter dictum*. *See id.*

In the instant case, the Court of Appeals made the following statements in its unpublished opinion of February 23, 2000, regarding whether Williams had proven the making of an oral contract for the sale of land by clear and convincing evidence:

> The evidence demonstrates that the transaction at issue clearly had the requisite objective indicators of mutual agreement necessary to form a contract and that appellant established, by clear and convincing evidence, that an agreement was reached. Appellant established the property's purchase price, the amount of the down

payment and the manner in which it would be satisfied, the amount of each monthly payment, and the term of the contract. In our view, appellant's actions in securing tenants, making repairs and improvements to the property, and securing insurance on it, along with the substantial amount of money he paid appellee, overwhelmingly demonstrate that both parties viewed this transaction as a sale. One cannot reasonably conclude that appellant's actions were those of a tenant.

. . . .

. . . As discussed above, appellant paid a substantial amount of money to appellee, made improvements and repairs, and secured tenants, from whom he collected rent, for the property. Appellant's actions were more than sufficient to remove the contract from the statute of frauds.

*Ward I*, slip op. at 4-6.

There is no doubt in our minds that these "findings" by the Court of Appeals are *obiter dictum* and were not binding on the circuit court. It is further radiantly clear that appellate courts do not make findings of fact but rather review findings of fact of the circuit court to determine whether they are clearly erroneous. *See* Ark. R. Civ. P. 52(a). In deciding whether the grant of a motion for directed verdict was appropriate, appellate courts review whether there was substantial evidence to support the circuit court's decision. *See, e.g., Woodall v. Chuck Dory Auto Sales, Inc.*, 347 Ark. 260, 61 S.W.3d 835 (2001).

But our inquiry does not end there. The question is whether the circuit court deferred to or impermissibly relied on the *obiter dictum* of the Court of Appeals and, thereby, failed to satisfy its role as factfinder. We think not. Though the Wards correctly note that the circuit court did refer to the Court of Appeals opinion in *Ward I* in its letter opinion, we are persuaded by the circuit court's statement about the scope of its review. The court said:

I have reviewed the proof from the hearings on January 25, 1998, and March 14, 2001, in the above referenced case as well as the

plaintiff's Pre-Trial and Post Trial Briefs, the defendants' Post Trial Brief and the Opinion of the Arkansas Court of Appeals dated February 23, 2000.

Without question, the circuit court did an independent review of the evidence.

We are further influenced by the fact that the circuit court engaged in extensive questioning of counsel for the parties at the second bench trial, following counsels' closing arguments. In that colloquy, the judge delved into the terms of the contract but also alluded to the fact that he was going to read the transcript of the original hearing in which Williams presented his case and disregard any argument not supported by evidence:

> THE COURT: I need to go back and read the Court of Appeals opinion. What was your recollection of the Court of Appeals' opinion with respect to their reading of the case? As I remember, they said the proof was that there was an enforceable contract.

> COUNSEL FOR WILLIAMS: I think they said that.

> COUNSEL FOR WARD: At our last hearing we said that a fair reading of that is that the plaintiff made a prima facie case with respect to—

> THE COURT: An enforceable contract.

> COUNSEL FOR WARD: An enforceable contract.

> THE COURT: If that's the case, then it seems to me the burden of proof is on you based on what they said.

> COUNSEL FOR WARD: Burden of persuasion.

> THE COURT: Okay. To change that. What I heard here today that I can say to the Court of Appeals: "This is why it's not what you thought it was."

COUNSEL FOR WARD:   I don't think I can tell you with specificity what the terms of this contract were.

THE COURT:   I'm not too sure but what—that was not my position before the Court of Appeals told me I erred.

. . . .

THE COURT:   The truth is the Court of Appeals said there was enough there for a contract regardless of what problems we may have with it, they have said, "There is a contract. It's enforceable." At least that's the way I read it.

COUNSEL FOR WARD:   There's a prima facie case.

THE COURT:   Which in my mind means it's not the burden of proof, it's the burden of persuasion shifts to you and I'm asking you what is it that I can rely on to tell me why there is not.

. . . .

THE COURT:   I'm going to go back and read the original hearing and I'll disregard any argument that is not supported by the evidence.

■   The judgment clearly and specifically makes findings of fact, as already noted in this opinion, without reference to the Court of Appeals opinion in *Ward I*. We hold that the circuit court did not abdicate its role as factfinder in this case.

The dissent interprets what the circuit court did differently. We, however, take the circuit court at its word. The court in its colloquy with counsel at the end of the second trial stated it would go back and reread the original hearing and disregard any argument not supported by evidence. In its letter opinion, the circuit court confirmed it had "reviewed the proof" from both trials. And then in its judgment, the circuit court made its findings based on that proof and without reference to the court of appeals' decision

in *Ward I*. Again, we conclude that the circuit court weighed the proof from both trials and made its decision accordingly.

## II. Meeting of the Minds

For their second point, the Wards argue that the Court of Appeals' statement in *Ward I* that the phrase "meeting of the minds" had fallen out of favor was error due to the fact that this court recently used the term in *Williamson v. Sanofi Winthrop Pharmaceutical, Inc.*, 347 Ark. 89, 60 S.W.3d 428 (2001). Thus, the Wards maintain, *Ward I* conflicts with our *Williamson* decision.

Williams responds that the Wards' argument "is the classic 'distinction without a difference.' " He contends that there is no meaningful difference between "[a] meeting of the minds as to all terms, using objective indicators," which was the test cited in our *Williamson* decision and "objective manifestations of mutual assent," which was the test used by the Court of Appeals in *Ward I*.

■ ■ As already stated in this opinion, this court, following the grant of a petition for review, reviews what occurred in the circuit court for error and not the opinion of the Court of Appeals. *See BPS, Inc. v. Parker, supra*. Bearing this standard in mind, we turn to the appropriate test for determining agreement to a contract by the parties. In *Williamson*, we said "it is well settled that in order to make a contract there must be a meeting of the minds on all terms, *using objective indicators*." *Williamson*, 347 Ark. at 98, 60 S.W.3d at 434 (emphasis added). It is clear that this court employs an objective test for determining mutual assent. Indeed, this court made it clear more than a decade ago that though the phrase "meeting of the minds" may have been used in our decisions, we meant objective indicators of agreement and not subjective opinions. *See Crain Indus., Inc. v. Cass*, 305 Ark. 566, 810 S.W.2d 910 (1991). It is manifest from the circuit court's judgment that that court found objective indicators of the parties' assent to contract by virtue of the performance of its terms. There was no error in this regard.

## III. Clear and Convincing Evidence

For the Wards' third point, they contend that the Court of Appeals erred in holding that there was clear and convincing evidence that a contract existed. They state that the proof by both parties varied greatly as to the terms of the agreement. They

contend that the only objective evidence presented were the twenty-six checks written by Williams to Ward which stated "lease" in the memorandum field. Based on that, the Wards maintain that it is difficult to discern how a factfinder could find clear and convincing evidence in Williams's favor.

In *Williamson v. Sanofi Winthrop Pharmaceuticals, Inc., supra,* this court set forth the essential elements of a contract: (1) competent parties, (2) subject matter, (3) legal consideration, (4) mutual agreement, and (5) mutual obligations. We also said that we will keep in mind the following two principles when determining whether a contract has been entered into: "(1) a court cannot make a contract for the parties but can only construe and enforce the contract that they have made; and if there is no meeting of the minds, there is no contract; and (2) it is well settled that in order to make a contract there must be a meeting of the minds as to all terms, using objective indicators." *Williamson v. Sanofi Pharmaceuticals, Inc.,* 347 Ark. at 98, 60 S.W.3d at 434. Clear and convincing evidence has been defined by this court as "that evidence which produces a firm conviction in the factfinder that the allegation at issue is true." *Carter v. Four Seasons Funding Corp.,* 351 Ark. 637, 653, 97 S.W.3d 387, 395 (2003).

The standard of review for bench trials is whether the circuit court's findings are clearly erroneous. *See* Ark. R. Civ. P. 52(a); *Chavers v. Epsco, Inc.,* 352 Ark. 65, 98 S.W.3d 421 (2003). The circuit court found in its judgment that Williams had fully performed the oral contract and that the Wards had received more than the purchase price agreed to for the land. The manner of payment and other performance is specifically spelled out in the judgment. There was disagreement between the parties in their testimony as to why the term "lease" was written in the memorandum field of many monthly checks. Disputed facts and determinations of credibility, however, are within the province of the factfinder to resolve. *See Chavers v. Epsco Inc., supra.* We cannot say that the circuit court clearly erred in its decision that an oral contract had been established.

*IV. Mootness*

Appellee Williams advances the argument in his Supplemental Brief Upon Review that the land in question has already been deeded to him due to the Wards' failure to post a supersedeas bond

and, thus, this appeal is moot. Williams further notes that the Wards did not appeal from the second order vesting title to the land in him. This means, he contends, that the matter is over and done with, and the pending appeal is not viable.

We disagree. The judgment the Wards appealed from ordered that they convey the land to Williams, as he was entitled to specific performance of the oral contract. This was a final order. It is true that a temporary stay was later lifted due to the Wards' failure to post a supersedeas bond and title was vested in Williams. Nevertheless, we do not believe that the absence of a supersedeas bond and the granting of the land to Williams as part and parcel to execution on a judgment nullifies an appeal from that underlying judgment. Confirming our belief is the fact that Williams cites us to no authority to support his contention. Accordingly, we decline to hold this appeal is moot on the ground proposed by the appellee.

Affirmed.

IMBER, J., dissents.

ANNABELLE CLINTON IMBER, Justice, dissenting. I must dissent because I believe that the trial court in this case impermissibly deferred to the Court of Appeals' erroneous language, thereby abdicating its role as factfinder. In order to fully understand how the error in this case occurred, it is necessary to go back to the language in the Court of Appeals' unpublished opinion in *Ward I*, in which the Court of Appeals incorrectly made specific findings:

> The evidence demonstrates that the transaction at issue clearly had the requisite objective indicators of mutual agreement necessary to form a contract and that appellant *established, by clear and convincing evidence, that an agreement was reached.* Appellant *established* the property's purchase price, the amount of the down payment and the manner in which it would be satisfied, the amount of each monthly payment, and the term of the contract. In our view, appellant's actions in securing tenants, making repairs and improvements to the property, and securing insurance on it, along with the substantial amount of money he paid appellee, *overwhelmingly demonstrate that both parties viewed this transaction as a sale.* One cannot reasonably conclude that appellant's actions were those of a tenant.

*Ward I*, slip op. at 4-5 (emphasis added).

While it is true that a plaintiff must establish an oral contract by clear and convincing evidence, that standard of proof is utilized by the trial court when deciding a case on its merits after hearing evidence from both sides. *See Dolphin v. Wilson*, 328 Ark. 1, 942 S.W.2d 815 (1997). In *Ward I*, the appeal was from a Rule 50(a) dismissal after hearing only the plaintiff's evidence. In *Swink v. Giffin*, 333 Ark. 400, 970 S.W.2d 207 (1998), we reiterated the trial court's duty under such circumstances:

> . . . In a long line of cases, beginning with *Werbe v. Holt*, 217 Ark. 198, 229 S.W.2d 225 (1950), we have held that a chancellor's duty in the circumstances presented here is to review the defense motion for dismissal at the conclusion of the plaintiffs' case by deciding whether, if it were a jury trial, the evidence would be sufficient to present to the jury. . . . Rule 50(a) and [its precursor statute] permit the granting of a dismissal only when the plaintiff's evidence is insufficient to go forward, i.e., to constitute a *prima facie* case for relief.

*Id.* at 403. We then went on to quote from *Neely v. Jones*, 234 Ark. 812, 813, 354 S.W.2d 726, 727 (1962) (*Neely II*):

> . . . [W]e have consistently held that a [grant of a motion to dismiss under Rule 50(a)] should be sustained only if that proof, viewed in its most favorable light, would present no question of fact for a jury if the case were being tried at law. In such a situation the chancellor *does not exercise fact-finding powers that involve determining questions of credibility* or of the preponderance of the evidence. [citation omitted].

*Swink v. Giffin*, 333 Ark. at 403-04 (emphasis in original).

The majority correctly states that appellate courts do not make findings of fact but rather review findings of fact of the circuit court to determine whether they are clearly erroneous. *See* Ark. R. Civ. P. 52(a) (2003). Thus, the majority holds that the statements by the Court of Appeals were *obiter dictum* and were not binding on the circuit court. However, the Court of Appeals overstepped its bounds by finding that there was an enforceable contract between the parties.

The Court of Appeals should have held that a *prima facie* case had been made — a decision that would have bound the trial court to nothing other than allowing the trial to go forward. Instead, the

Court of Appeals held that the plaintiff-appellant had established by clear and convincing evidence not only the agreement, but the terms of the agreement — purchase price, amount of down payment and manner in which it would be satisfied, amount of monthly payments, and the term *of the contract*. In fact, the Court of Appeals held that the appellant's evidence overwhelmingly demonstrated that *both* parties viewed the transaction as a sale, even though it did so without benefit of the other party's evidence. So, instead of stating that a *prima facie* case was made, the Court of Appeals found that an oral contract existed.

The majority holds that *Ward I* did not bind the trial court on remand, and that the trial court did not impermissibly abdicate its responsibility to weigh the plaintiff's evidence against the defendant's evidence in making its decision. The key to the trial court's decision is found in both the colloquy that is quoted by the majority and the trial court's letter opinion dated May 23, 2001. Referring to the colloquy, the trial court on remand apparently believed the Court of Appeals' finding of an enforceable contract was binding, and the trial court, far from weighing the plaintiff's evidence against the defendant's evidence, believed the plaintiff's evidence had already established that a contract existed unless the defendant could refute the existence of the contract:

THE COURT: The truth is the Court of Appeals said there was enough there for a contract regardless of what problems we may have with it, they have said, "There is a contract. It's enforceable." At least that's the way I.read it.

DEFENSE COUNSEL: There's a prima facie case.

THE COURT: Which in my mind means it's not the burden of proof, it's the burden of persuasion shifts to you and I'm asking you what it is that I can rely on to tell me why there is not [a contract].

At the end of the colloquy, the trial court stated, "I'm going to go back and read the original hearing and I'll disregard any argument that is not supported by the evidence." This, combined with the fact that the Judgment did not mention *Ward I*, convinces the majority that the trial court went back over all the evidence

and, disregarding the Court of Appeals' opinion, gave the plaintiff's evidence only the weight he should have properly given it. I am not persuaded.

The trial court here made the same mistake that was made by the appellants in the similar case of *Neely v. Jones*, 234 Ark. 812, 354 S.W.2d 726 (1962) (*Neely II*), which was cited in *Swink, supra*. In *Neely v. Jones*, 232 Ark. 411, 337 S.W.2d 872 (1960) (*Neely I*), the trial court had sustained a demurrer to the plaintiffs' evidence (the pre-Rules equivalent of a Rule 50(a) dismissal). The plaintiffs appealed and we reversed and remanded, holding that the plaintiffs had raised a question of fact as to the issue in question. *Id*. On remand, the trial court heard the defendants' evidence, and then found for the defendants. The plaintiffs again appealed, this time asserting that our holding in *Neely I* was "law of the case" establishing as a fact the issue in question. *Id*. We affirmed the trial court, explaining that the same evidence that can establish a *prima facie* case may not be enough to establish a claim on its merits:

> . . . [O]ur decision on the first appeal meant only that if the case had been heard at law upon the plaintiffs' evidence it would have been error to direct a verdict for the defendants.

> Upon remand the defendants eventually rested their case, and the cause was submitted upon the merits. Then, *for the first time*, it was proper for the chancellor to weigh the evidence and determine where its preponderance lay. *He was not obliged to find for the plaintiffs*, any more than a jury would have been if the case had been retried at law after having been reversed for the trial court's error in directing a verdict for the defendants. Thus our decision upon the first appeal did not preclude the chancellor from finding, *even upon the original proof alone*, that the plaintiffs had not proved their case by a preponderance of the evidence.

*Neely v. Jones*, 234 Ark. 812, 813-14; 354 S.W.2d 726, 727 (1962)(emphasis added).

The colloquy shows that the trial court believed it had to find the plaintiffs had proved their case *on their original proof alone* unless the defendants could somehow rebut that proof, but this belief is contrary to our holding in *Neely II*. Far from weighing the evidence for the first time after the close of the defendants' case, as required by *Neely II*, the trial court's memorandum letter dated May 23, 2001; shows that the Court of Appeals' "finding" was

given deference and that the trial court clearly weighed the defendants' evidence against *that opinion*, instead of properly weighing it against the plaintiff's evidence:

> . . . The Court of Appeals found that the plaintiff's proof, "demonstrates that the transaction at issue clearly had the requisite objective indicators of mutual agreement necessary to form a contract and that appellant established, by clear and convincing evidence, that an agreement was reached."
>
> The question then is whether the defendants *rebutted that proof* sufficiently to conclude *otherwise*. The answer is no. Contrary to defendants' argument that the terms of the contract are not definite, *the Opinion* is very clear: "Appellant established the property's purchase price, the amount of the down payment and the manner in which it would be satisfied, the amount of each monthly payment, and the term of the contract." In fact, all of the defendants' contentions are *contrary to the Court of Appeals findings* . . . [Emphasis added.]

While the judgment does not mention the Court of Appeals' opinion, it is clear from the opinion letter that the trial court arrived at its decision by weighing the defendants' evidence against the Court of Appeals' "findings" rather than weighing it against the plaintiff's proof. First, the trial court required the defendants to "rebut" the plaintiff's proof, indicating that the trial court impermissibly shifted the burden of persuasion and gave the plaintiff's proof a presumption that had to be overcome by the defendants. There is no doubt that the trial court arrived at this presumption because it read the Court of Appeals' "finding" as a presumption that the plaintiff had established the oral contract, rather than a *prima facie* case raising a question of fact as to whether or not an oral contract existed. Next, at no time in the opinion letter does the trial court claim to have weighed the defendants' proof against the plaintiff's proof. Instead, the opinion letter shows that the comparisons made were between the defendants' argument and "the Opinion," and between the defendants' contentions and "the Court of Appeals findings."

The majority holds that, because the judgment specifically makes findings of fact without reference to the Court of Appeals' opinion, the trial court did not abdicate its role as factfinder. Yet, the majority ignores the statements in the opinion letter that the

trial court arrived at its decision by weighing the defendant's evidence against the Court of Appeals' opinion. In my view, the trial court abdicated its role as factfinder. Accordingly, I must respectfully dissent.