Darrin GREEN, M.D., and Floyd Gonzalez, M.D. *v.*
Epigmenio NUÑEZ

CA 06-1072                                      253 S.W.3d 11

Court of Appeals of Arkansas
Opinion delivered March 14, 2007

*Mitchell, Williams, Selig, Gates & Woodyard, PLLC,* by: *Ken Cook, Jeffrey L. Singleton,* and *Anthony W. Juneau,* for appellant Darren Green, M.D.

*Kutak Rock,* by: *Phil Malcom* and *Bradley S. Runyon,* for appellant Floyd Gonzalez, M.D.

R OBERT J. GLADWIN, Judge. Appellants asked to intervene
in this probate matter to determine whether appellee
Epigmenio Nuñez was a duly appointed personal representative when
he filed a wrongful-death/survival lawsuit against them. The probate
judge denied the intervention, and this appeal followed. We affirm.

Mr. Nuñez's son died on January 18, 2004, while allegedly
under the care of the appellant physicians. On February 25, 2005,
Mr. Nuñez asked the probate court to appoint him administrator
of his son's estate. He requested letters of administration, declared
the estate's primary asset to be the potential benefits from a
wrongful-death lawsuit, and sought approval of a legal-
representation contract.

On January 6, 2006, the court entered an order appointing
Mr. Nuñez as administrator, but no letters of administration were
issued at that time. On January 13, 2006, Mr. Nuñez sued
appellants, asserting wrongful-death and survival causes of action
based on medical malpractice.

On March 30, 2006, which was about six weeks after the suit
was filed, the probate judge ordered the court clerk to "issue
Letters of Administration [to Mr. Nuñez] as of January 6, 2006,
*nunc pro tunc.*" The letters were then issued bearing the date January
6, 2006.

On April 25, 2006, appellants filed a motion to intervene in
the probate case. They contended that, because Mr. Nuñez failed
to obtain letters of administration prior to filing the January 13,
2006, lawsuit, he had no standing to bring the action. And, they
claimed, because the two-year statute of limitations on medical-
malpractice actions had expired by the time the letters were
actually issued, the suit was time-barred.[1] They therefore asked to
intervene for the purpose of protecting their statute-of-limitations
defense and for the purpose of setting aside the nunc pro tunc
order.

On June 26, 2006, the probate judge denied the motion to
intervene. He essentially reasoned that the outcome of the inter-
vention would not favor appellants and they therefore had no
interest in the probate matter. Among the court's rulings were that
Mr. Nuñez's tort complaint was not a nullity because he had been
appointed as administrator at the time he filed the lawsuit, despite

---

[1] The two-year statute of limitations for medical malpractice applies where death
ensues from medical injuries. *See Davis v. Parham,* 362 Ark. 352, 208 S.W.3d 162 (2005).

not yet having letters of administration, and that the issuance of the letters of administration *nunc pro tunc*, effective January 6, 2006, was proper.[2] Appellants now appeal from the denial of their motion to intervene, which is an appealable order. *See N. W. Ark. Area Agency on Aging v. Golmon*, 70 Ark. App. 136, 15 S.W.3d 363 (2000).

Probate matters are reviewed de novo on appeal. *Helena Reg'l Med. Ctr. v. Wilson*, 362 Ark. 117, 207 S.W.3d 541 (2005). We will not disturb the probate judge's decision absent an abuse of discretion or a finding that the judge's decision is clearly erroneous. *Id.*

■ We first consider whether Mr. Nuñez was required to have letters of administration issued to him before he was empowered to file a wrongful-death/survival action. In his petition seeking appointment as administrator, Mr. Nuñez requested letters of administration and evidenced his intention to file suit on behalf of the estate. In the order appointing him administrator, the court acknowledged the potential for a lawsuit, dispensed with bond, and approved a legal-representation contract. Under these particular circumstances, it is quite clear that the court, upon entering the order of appointment on January 6, 2006, granted Mr. Nuñez the authority to file the lawsuit.

Appellants contend, however, that such authority cannot be conferred until letters of administration are issued. They point out that, in *Filyaw v. Bouton*, 87 Ark. App. 320, 191 S.W.3d 540 (2004), we stated that an order appointing a personal representative was not effective until it was filed with the clerk and "letters of administration were issued" and that the personal representative in that case had no standing to file a wrongful-death suit "until the issuance of the letters [of administration]." *Id.* at 325-26, 191 S.W.3d at 543. In so stating, we referred to *Jenkins v. Means*, 242 Ark. 111, 411 S.W.2d 885 (1967), whose language indicated that, under certain venue statutes, letters of administration were required before a personal representative could "sue or be sued." *Id.*

---

[2] The court cited other reasons for its ruling, but we need not address them, given that we are affirming on other grounds. However, there is one matter that deserves comment. The court ruled that Mr. Nuñez's complaint was not a nullity because, in addition to its being filed by him as administrator, it was filed alternatively by him and his wife as heirs at law. However, that alternative filing would have had no effect on the survival action. A survival action must be brought by the estate's personal representative and cannot be brought by the heirs. *See Smith v. St. Paul Fire & Marine Ins. Co.*, 76 Ark. App. 264, 64 S.W.3d 764 (2001).

at 114, 411 S.W.2d at 887-88. Despite the language in *Filyaw* and *Jenkins*, we decline to apply them here because both cases are readily distinguishable. In *Jenkins*, the court ruled that the purported personal representative could not be served with process because she had not yet filed her petition for appointment. In *Filyaw*, we held that the purported personal representative had no authority to file suit because the order appointing him had not been entered of record. No such infirmities are present here. Mr. Nuñez's appointment order was duly entered before he filed suit.

■ Nevertheless, we must come to terms with our language in *Filyaw*. The issue in *Filyaw* was whether the trial court's mere signature on an order appointing a personal representative was sufficient to confer the authority to file suit. We held that it was not and that the order must be entered, i.e., filed with the clerk, to be effective. However, in addition to arriving at that conclusion we chose — not wisely perhaps but in the spirit of accommodation — to address Mr. Filyaw's response to a claim by one of the appellees that he was required both to be appointed and receive letters of administration. The result was the language quoted above, which is now relied on by appellants. In retrospect, it is plain that our discussions regarding letters of administration in *Filyaw* were not necessary to the decision we reached. We therefore determine that the language is obiter dictum, and we are not bound by it. *See Ward v. Williams*, 354 Ark. 168, 118 S.W.3d 513 (2003) (holding that, where a discussion or comment in an opinion is not necessary to the decision reached therein, the discussion or comment is obiter dictum and that the appellate court is not bound by it, even if couched in terms that imply the court reached a conclusion on a matter).

So we reiterate our conclusion that the trial court, by its order entered January 6, 2006, conferred on Mr. Nuñez the authority to file the wrongful-death/survival lawsuit. From that conclusion, it is no great step to say that the court, in issuing the letters of administration nunc pro tunc to January 6, 2006, committed no abuse of discretion. *See Croft v. Croft*, 8 Ark. App. 20, 648 S.W.2d 511 (1983) (holding that the making or refusing of a nunc pro tunc order rests in the sound discretion of the lower court). The court explained its decision as follows:

> The Court properly issued the order of March 30, 2006 directing the Clerk to issue the letters of administration *nunc pro tunc*. The original petition requested that letters be issued. Although no

explicit direction to issue letters of administration was included in the Order, the intent of the Order was to empower the Administrator to file the wrongful death and survival lawsuit. The *nunc pro tunc* order merely memorializes what was actually done when the Administrator was appointed. The Administrator had a right to rely on that Order.

The judge's words reflect that, under these circumstances, he viewed the letters as a memorialization of that which had, in reality, already been accomplished — authorizing Mr. Nuñez to act as administrator for the purpose of filing suit. *See generally Fitzjarrald v. Fitzjarrald*, 233 Ark. 328, 344 S.W.2d 584 (1961) (holding that a nunc pro tunc order may be entered to make the record conform to the action that was in reality taken). Given the court's clear decision to confer the necessary authority on Mr. Nuñez by its January 6, 2006, order, we cannot say that the court's nunc pro tunc issuance of the letters, effective to that date, was an abuse of discretion.

█ Based on the foregoing, we conclude that, at the time Mr. Nuñez filed suit on January 13, 2006, he was clothed with the authority to do so. Appellants therefore have no interest in the probate action and no reason to intervene, either as a matter of right or by permission. The probate court's denial of the intervention is affirmed.

Affirmed.

ROBBINS, J., agrees.

GRIFFEN, J., concurs.

WENDELL L. GRIFFEN, Judge, concurring.

*We love to overlook the boundaries which we do not wish to pass.*
    — Samuel Johnson (1709-1784)

I write separately to address the argument that appellants had standing to intervene in the probate proceeding for administration of the decedent's estate. Our probate code limits the class of "interested persons" to heirs, devisees, spouses, creditors, and others who have a property right, interest in, or claim against the estate being administered. Ark. Code Ann. § 28-1-102(a)(11) (Repl. 2004). No legislation to expand or otherwise amend the

definitions in § 28-1-102 has been enacted since 1949. We presume that the Arkansas General Assembly is familiar with the appellate courts' interpretations of statutes as well as prior legislation. *Estate of Hull v. Union Pac. R. Co.*, 355 Ark. 547, 141 S.W.3d 356 (2004); *Benson v. State*, 86 Ark. App. 154, 164 S.W.3d 495 (2004). Therefore, it follows that the legislature is fully aware of the Arkansas probate code and its definition of "interested persons." With the increased focus on medical-malpractice litigation, as evidenced by the passage of the Civil Justice Reform Act of 2003, No. 649, 2003 Ark. Acts 2130 (codified at Ark. Code Ann. § 16-55-201 et seq. (Repl. 2005)), we can also presume that the Arkansas General Assembly is particularly knowledgeable of statutes concerning limitation of actions, medical malpractice, wrongful death, and probate estates. Nevertheless, I am unaware of any attempt to amend the probate code so as to expand the definition of "interested persons" to include potential or target defendants who would assert defenses against threatened or impending litigation that might benefit estates. Apparently, the standing argument advanced by appellants in this appeal is the first attempt to judicially expand the definition of "interested persons" to that end.

Throughout this case, appellants have contended that they have a right to intervene in a probate proceeding to administer a decedent's estate under Rule 24 of the Arkansas Rules of Civil Procedure. Appellants rely heavily on *Helena Regional Medical Center v. Wilson*, 362 Ark. 117, 207 S.W.3d 541 (2005), for the proposition that they need not be within the class of "interested persons" set forth in the probate code if they meet the requirements of Rule 24. To have an absolute right to intervene, a party must "claim an interest relating to the property or transaction which is the subject of the action." Ark. R. Civ. P. 24(a). To have a permissive right, a party must have a claim or defense in common with the question of law or fact at issue in the main action. Ark. R. Civ. P. 24(b).

In the instant case, the impending medical-malpractice action against appellants clearly did not qualify appellants as "interested persons" so as to create standing for them to appear in the probate court and challenge whether the appellee was fit to serve as administrator of the decedent's estate. Appellants do not allege that they are heirs, devisees, spouses, creditors, or otherwise claimants against the decedent's estate. They are target defendants in the medical-malpractice claim that is the sole asset of the estate.

While appellants obviously are "interested" in not being sued, and in being successful if they are sued, that objective does not create any ground for them to challenge how the estate is administered and who should administer it.

Appellants' argument that they have standing in the probate proceeding due to their statute of limitations defense to the estate's tort claim is facially inviting. According to that argument, because the probate proceeding is where the authority to assert a tort claim on behalf of an estate is determined, appellants (and persons similarly situated) will forfeit their statute of limitations defense if they are prevented from appearing as "interested persons" to challenge untimely appointments of administrators. Defendants may not challenge the validity of a probate appointment in a tort action. If the probate appointment is dispositive on a limitations defense, it would seem logical to grant standing to a tort defendant to challenge the probate appointment in order to assert the limitations defense. Otherwise, appellants argue, the defense would effectively be lost. Thus, appellants rely upon the procedure for intervention prescribed by Rule 24 of the Arkansas Rules of Civil Procedure to gain access to the probate proceeding in order to protect their statute of limitations affirmative defense.

Alas, "the devil is in the details." Whatever the facts may be surrounding a statute of limitations defense, those facts have nothing to do with determining who should administer an estate or how it should be administered. Moreover, there are sound reasons why a probate judge should not confuse the process for administering an estate with adjudicating a tort claim that is an estate asset. The probate court determines whether and when a person is authorized to prosecute a tort claim on behalf of an estate. That decision is separate from whether the tort claim is meritorious, on whatever grounds. That decision is also separate from whether a likely defendant to a tort claim will assert an affirmative defense, and whether an asserted defense (such as limitations) is valid. Simply put, whether a tort defendant will prevail on a limitations defense should not concern the probate court when it considers a petition to appoint an administrator because the probate proceeding does not function to adjudicate tort claims or decide defenses to them.

Courts and judges should not engage in actions that are essentially legislative in their effect. A decision that expands the class of "interested persons" for purposes of probate administration beyond the individuals named in a statute is legislative action, no

matter how it may be asserted. The General Assembly does not adjudicate tort claims. The courts should not legislatively create new members of the class of "interested persons" concerning administration of an estate.

Despite the superficial attractiveness of appellants' contention regarding standing, neither the procedure for intervention under Rule 24 of the Arkansas Rules of Civil Procedure nor the understandable interest of tort defendants to assert affirmative defenses justifies disregard for the separation-of-powers doctrine upon which our system of government stands. It is neither necessary nor wise for courts and judges to judicially legislate an amendment to the statutory definition of "interested persons" found in the probate code. Rather, appellants should pursue the legislative process to achieve the result they seek.