Alice STEWARD and Sonya Steward as Co-Special Adminstrators of the Estate of Charlotte Steward, Deceased *v.* Kristi STATLER, M.D., and Kim Davis, M.D., and St. Bernard's Medical Center

06-1306                                                             266 S.W.3d 710

Supreme Court of Arkansas
Opinion delivered November 1, 2007

[Rehearing denied December 6, 2007.]

*The Brad Hendricks Law Firm,* by: *Lamar Porter; Brian G. Brooks, Attorney at Law, PLLC,* by: *Brian G. Brooks,* for appellants.

*Womack, Landis, Phelps, McNeill & McDaniel,* by: *Paul D. McNeill; Barrett & Deacon, P.A.,* by: *Paul D. Waddell, Brandon J. Harrison,* and *Jason M. Milne,* for appellees.

Tom Glaze, Justice. Appellants Sonya and Alice Steward appeal from the order granting summary judgment to Appellees Kristi Statler, M.D., Kim Davis, M.D., and St. Bernard's Medical Center ("St. Bernard's"). We reverse and remand.

The facts are set forth in the Stewards' complaint. On March 1, 2003, Charlotte Steward was admitted to St. Bernard's for purposes of giving birth to her first child. After her child was born, Charlotte started experiencing dizziness, rapid heart rate, low hemoglobin and hematocrit, and low blood pressure. She was also experiencing pain. On March 4, Charlotte died. The Stewards filed suit, alleging that it was only shortly before her death that efforts were made to diagnose her condition. Their complaint further alleged that Dr. Statler, a first-year family-practice resident at the time, and Dr. Davis, Dr. Statler's supervising attending physician, had been negligent in the treatment of Charlotte's care. The complaint also alleged that unknown nurses were responsible for failure to diagnose Charlotte's symptoms. The following procedural time-line is relevant to this appeal:

- On March 17, 2003, just days after Charlotte's death, the circuit court entered an order appointing Clarence Steward as special administrator of the Charlotte Steward Estate.

- On April 29, 2003, the circuit court entered an order appointing Clarence Steward *and* Sonya Steward as special co-administrators of the Charlotte Steward Estate.

- On October 23, 2003, the circuit court entered an order, extending the administration term of special co-administrators Clarence and Sonya Steward.

- On December 30, 2003, Clarence and Sonya Steward filed a complaint against Drs. Statler and Davis and St. Bernard's, alleging medical negligence. This complaint asserted a survival claim and a wrongful-death claim against the defendants.

- Several months later, on February 5, 2004, Sonya and Clarence filed an acceptance of appointment as special administrator of the Charlotte Steward Estate. That same day, letters of special administration were issued by the clerk to Clarence and Sonya.

- On April 18, 2006, Clarence Steward was discharged as a special co-administrator, and Alice Steward was appointed as co-special administrator.

- On March 4, 2005, the two–year statute of limitations to file a medical malpractice action expired.

On May 10, 2006, St. Bernard's filed a motion for summary judgment, contending that it was entitled to judgment as a matter of law because the Stewards' complaint was not filed in compliance with the statutory requirements set forth in the wrongful-death and survival statutes, codified at Ark. Code Ann. §§ 16-62-101 & 102 (Repl. 2005). Specifically, St. Bernard's argued that an individual does not have standing to assert a wrongful-death action on behalf of the estate unless a probate proceeding had been commenced. St. Bernard's maintained that, pursuant to Ark. Code Ann. § 28-40-102(b) (Repl. 2004), a probate proceeding could not be "commenced" until (1) a petition for appointment had been filed, (2) the court determined that the individual was qualified to act on behalf of the estate, (3) the appointed individual had accepted the appointment as personal representative of the estate, *and* (4) the letters of administration were issued authorizing the personal representative to act for and on behalf of the estate. Drs. Statler and Davis filed a separate motion for summary judgment, wherein they made the same arguments. The Stewards responded, maintaining that letters of administration were not required to commence a wrongful death action, and, even if they were, the letters of administration "related back" to before the complaint was filed because the circuit court had entered an order of appointment. The circuit court held a hearing on the motions, and, on September 6, 2006, the circuit court granted St. Bernard's and Drs. Statler and Davis's motions for summary judgment dismissing the Stewards' claims with prejudice. From that order, the Stewards bring this appeal.

Since the entry of the circuit court's order of dismissal, the 2007 General Assembly enacted Act 438, which amends Ark. Code Ann. § 28-48-102 to state, "Letters of administration are not necessary to empower the person appointed to act for the estate." Act 438 of 2007. Act 438 also provides, "The order appointing the administrator empowers the administrator to act for the estate, and any act carried out under the authority of the order is valid." *Id.* This Act became effective on July 31, 2007, more than ten months after entry of the September 6, 2006, order dismissing the Stewards' complaint.

The question arises as to whether Act 438 is to be applied retroactively in the instant case. Generally, retroactivity is a matter of legislative intent, and unless it expressly states otherwise, we presume the legislature intends for its laws to apply only prospectively. *JurisdictionUSA, Inc. v. Loislaw.com, Inc.,* 357 Ark. 403, 183

S.W.3d 560 (2004). Any interpretation of an act must be aimed at determining whether retroactive effect is stated or implied so clearly and unequivocally as to eliminate any doubt. *Id.* In determining legislative intent, we have observed a strict rule of construction against retroactive operation and indulge in the presumption that the legislature intended statutes, or amendments thereof, enacted by it, to operate prospectively only and not retroactively. *Id.* However, this rule does not ordinarily apply to procedural or remedial legislation. *Id.*

The strict rule of construction does not apply to remedial statutes that do not disturb vested rights, or create new obligations, but only supply a new or more appropriate remedy to enforce an existing right or obligation. *Bean v. Office of Child Support Enforcement,* 340 Ark. 286, 9 S.W.3d 520 (2000). Procedural legislation is more often given retroactive application. *Id.* The cardinal principle for construing remedial legislation is for the courts to give appropriate regard to the spirit which promoted its enactment, the mischief sought to be abolished, and the remedy proposed. *Id.* Although the distinction between remedial procedures and impairment of vested rights is often difficult to draw, it has become firmly established that there is no vested right in any particular mode of procedure or remedy. *See McMickle v. Griffen,* 369 Ark. 318, 254 S.W.3d 729 (2007). Statutes which do not create, enlarge, diminish, or destroy contractual or vested rights, but relate only to remedies or modes of procedure, are not within the general rule against retrospective operation. *Id.* In other words, statutes effecting changes in civil procedure or remedy may have valid retrospective application, and remedial legislation may, without violating constitutional guarantees, be construed to apply to suits on causes of action which arose prior to the effective date of the statute. *Id.*

In this case, it is clear to this court that Act 438 of 2007 does not disturb a vested right or create a new obligation. Before Act 438, a personal representative already had the right to bring a wrongful-death action against a defendant. Act 438 of 2007 simply provides that the personal representative has the right to bring the action at the time the order appointing the personal representative is entered, not merely at the time the letters of administration are entered. Therefore, we conclude that Act 438 is procedural and was meant to be applied retroactively.

At oral argument and in their supplemental brief, relying on Ark. Code Ann. § 28-40-102(b) (Repl. 2004)[1], St. Bernard's and Drs. Statler and Davis submit that, even if we apply Act 438 retroactively, this act does not alter other provisions of the probate code which provide how to commence a proceeding, and without a proceeding, they maintain no wrongful-death lawsuit can be filed.

Until the enactment of Act 438, it has been well-settled law, since Ark. Code Ann. § 28-40-102(b) was enacted in 1949, that letters of administration are necessary to vest in a personal representative or special administrator the authority to sue or be sued. In *Jenkins v. Means*, 242 Ark. 111, 114, 411 S.W.2d 885, 887 (1967), our court explicitly stated that "[n]othing can be read into either [Ark. Code Ann. § 28-40-102(b)] or [Ark. Code Ann. § 28-40-104] which would authorize a personal representative to sue or be sued until such time as he has received letters of administration." The Arkansas Court of Appeals reiterated the law in *Filyaw v. Bouton*, 87 Ark. App. 320, 326, 191 S.W.3d 540, 543 (2004), with the pronouncement that "[u]ntil the issuance of the letters, appellant [personal representative] had no standing under *Jenkins* to file suit."[2]

However, the General Assembly's enactment of Act 438 repeals the Arkansas Probate Code's long-standing provision establishing the legal commencement of a probate proceeding, Ark. Code Ann. § 28-40-102(b), by implication. While it is true that repeals by implication are not favored, *Donoho v. Donoho*, 318 Ark. 637, 639, 887 S.W.2d 290, 291 (1994); *Moore v. McCuen*, 317 Ark. 105, 108, 876 S.W.2d 237, 238 (1994), we reiterated in *Board of Trustees v. Stodola*, 328 Ark. 194, 201, 942 S.W.2d 255, 258 (1997), a repeal by implication does transpire when there exists an "invincible repugnancy" between the earlier and the later statutory provisions.

---

[1] That subsection states, "(b) The [probate] proceedings shall be deemed commenced by the filing of a petition, the issuance of letters, *and* the qualification of a personal representative. The proceeding first legally commenced is extended to all of the property in this state."

[2] Although the court of appeals appeared to change course in *Green v. Nuñez*, 98 Ark. App. 149, 253 S.W.3d 11 (2007), that case involved the probate court's issuance of letters of administration *nunc pro tunc*. *Id.*

■ Here, the later statute, Act 438 declares letters of administration to be unnecessary so long as there is an order appointing the administrator; whereas, the earlier statute, Ark. Code Ann. § 28-40-102(b), conditions the legal commencement of a probate proceeding upon the issuance of letters. The "invincible repugnancy" between these two statutes, such that both cannot stand, lies in the power of an administrator to act *before* a probate proceeding is legally commenced. Thus, pursuant to our rule of statutory construction that the earlier statute must yield to the later enactment, we conclude that Act 438 of 2007 effected a repeal by implication of Ark. Code. Ann. § 28-40-102(b) in probate proceedings. Stated simply, by the amendment, the General Assembly has rendered the requirement that the probate court clerk issue letters of administration obsolete and superfluous.

In this case, the facts reveal that the circuit court had entered an order appointing the Stewards as special co-administrators of Charlotte's estate. In light of Act 438, because the Stewards were empowered by the circuit court's order entered on April 29, 2003, we reverse the circuit court's grant of summary judgment.[3]

Reversed and Remanded.

HANNAH, C.J., and DANIELSON, J., concur.

JIM HANNAH, Chief Justice, concurring. I concur in the decision reached by the court in this case; however, I write separately because the analysis on the issue of when a personal representative or administrator is first empowered to act is incorrect. Even before Act 438 of 2007 was passed, personal representatives and administrators acted and were generally permitted by the circuit courts to act after appointment but before the letters issued. Contrary to the majority opinion, the case law on this issue was not clear and was not well developed.

It is not well-settled law that letters of administration are necessary to vest authority to sue or be sued. The language quoted by the majority from *Jenkins v. Means*, 242 Ark. 111, 114, 411 S.W.2d 885, 887-88 (1967), that "[n]othing can be read into either Ark. Stat. Ann. § 62-2102(b), *supra*, or Ark. Stat. Ann.

---

[3] Because we reverse on Act 438 grounds, we need not consider the Stewards' other points for reversal.

§ 62-2104 (Supp. 1965)[1] which would authorize a personal representative to sue or be sued until such time as he has received letters of administration," is obiter dictum. It is also a misstatement of the law. The issue in *Jenkins* was "whether a cause of action can properly be commenced against a decedent's estate before there has been an *appointment of a personal representative.*" *Jenkins,* 242 Ark. at 111, 411 S.W.2d at 886 (emphasis added). Issuance of letters of administration simply was not at issue. In *Jenkins,* this court held that the purported personal representative could not be served with process because she had not yet filed her petition for appointment.

There was no need in *Jenkins, supra,* to discuss the effect of issuance of letters of administration. Jenkins argued that an administrator obtains authority upon filing a petition to be appointed. Therefore, this court's statement in *Jenkins* in response to the argument that the filing of a petition for appointment by Gatlin gave her authority to act was superfluous to the issue presented in the case. Any discussion or comment not necessary to the decision reached in a case is obiter dictum. *Byme, Inc. v. Ivy,* 367 Ark. 451, 870 S.W.2d 212 (2006). This court is not bound by obiter dictum even if it is couched in terms that imply the court reached a conclusion on the matter. *Id.* Further, where a court's findings are obiter dictum a lower court is not bound by them. *See, e.g., Ward v. Williams,* 354 Ark. 168, 177, 118 S.W.3d 513, 518 (2003) ("There is no doubt in our minds that these 'findings' by the Court of Appeals are obiter dictum and were not binding on the circuit court.").

Additionally, the majority also errs in relying on the court of appeals's opinion in *Filyaw v. Bouton,* 87 Ark. App. 320, 191 S.W.3d 540 (2004), where the court of appeals, citing *Jenkins, supra,* stated that a personal representative cannot act until the letters of administration are issued. The court of appeals stated in *Green v. Nuñez,* 98 Ark. App. 149, 152, 253 S.W.3d 11, 13 (2007),[2] that its "discussions regarding letters of administration in *Filyaw*

---

[1] Ark. Code Ann. § 28-40-102(b) (Repl. 2004), or Ark. Code Ann. § 28-40-104 (Supp. 2005).

[2] The majority indicates in footnote 2 in the majority opinion that although the court of appeals "appeared to change course in *Green v. Nuñez,* 98 Ark. App. 149, 253 S.W.3d 11 (2007), that case involved the probate court's issuance of letters of administration nunc pro tunc." In *Green, supra,* as a consequence of the order nunc pro tunc, and although the letters of administration were actually issued on March 30, 2006, they related back to January 6, 2006,

were not necessary to the decision we reached. We therefore, determine that the language is *obiter dictum*, and we are not bound by it." Thus, *Filyaw* may not be cited for the purpose the majority cites it. In any event, the court of appeals in *Filyaw, supra*, relied on the obiter dictum in *Jenkins, supra*. It is of no precedential or persuasive value whatever. The issue in *Filyaw* was whether the personal representative had to be appointed before he could act. In *Green, supra*, the court of appeals stated that, "In *Filyaw*, we held that the purported personal representative had no authority to file suit because the order appointing him had not been entered of record." *Id. Filyaw* did not concern the question of whether authority arises only upon issuance of letters of administration.

The discussion in the present case regarding when a personal representative or administrator may sue or be sued is unnecessary to the decision in the present case. The discussion is obiter dictum and in error. Its inclusion only serves to confuse this case.

DANIELSON, J., joins.

---

when the personal representative was appointed. Thus, arguably, the court of appeals's analysis on the stated issue of "whether Mr. Nunez was required to have letters of adminis- tration issue to him before he was empowered to file a wrongful death/survival action," and is itself obiter dictum. *See Green*, 98 Ark. App. at 151, 253 S.W.3d at 12. However, whether it is obiter dictum or not, the court of appeals analysis in *Green* is correct. Even if *Green, supra* had not been decided, *Filyaw v. Bouton*, 87 Ark. App. 320, 191 S.W.3d 540 (2004), would still be in error for precisely the reasons set out in *Green, supra*. Whether or not the court of appeals has addressed the question of obiter dictum in *Filyaw, supra*, is not relevant to this court's decision. The decisions of the court of appeals are not precedent for this court. The court of appeals relied on obiter dictum in *Jenkins v. Means*, 242 Ark. 111, 411 S.W.2d 885 (1967), in reaching its decision in *Filyaw, supra*, and thus it cannot support the majority's decision in the present case. It should not be cited.