ESTATE of Sharon Leann HULL *v.*
UNION PACIFIC RAILROAD COMPANY

03-503                                                    141 S.W.3d 356

Supreme Court of Arkansas
Opinion delivered January 15, 2004

*Jon R. Sanford, P.A.*, by: *Jon R. Sanford*, for appellant.

*William H. Sutton, Robert S. Shafer*, and *Scott J. Lancaster*, for appellee.

JIM HANNAH, Justice. This is an appeal of an order granting summary judgment in favor of Appellee Union Pacific Rail-

road Company (Union Pacific). Appellant Estate of Sharon Hull (the Estate) argues that the Conway County Circuit Court erred in dismissing with prejudice the Estate's claim for wrongful death. This case was certified to this court, pursuant to Ark. Sup. Ct. R. 1-2(b)(5), as an appeal involving the overruling of precedent. We affirm the circuit court's order dismissing the Estate's claim for wrongful death.

*Facts*

On March 22, 1996, Sharon Hull was a passenger in a vehicle which was involved in an accident with a train operated by Union Pacific. Subsequent to the accident, Alvin Hull, as guardian of Sharon Hull, filed suit against Union Pacific and Paul D. Duke, a Union Pacific engineer.[1] In December 1998, the parties agreed to settle the case, and the probate court entered an order approving the settlement. On January 27, 1999, in consideration for and as part of the settlement with Union Pacific and Duke, Alvin Hull, as guardian of Sharon Hull, executed a release of all liability and claims related to the accident. On February 9, 1999, as a result of the settlement, the circuit court entered an order of dismissal with prejudice.

On December 11, 1999, Sharon Hull died. On February 14, 2002, Derrick Cossey by David Cossey, his father and next friend, and Chad Johns, filed suit against Union Pacific seeking damages as a result of the death of Hull. Derrick and Chad are the sons of Hull. In response to the suit filed by Hull's sons, Union Pacific filed a Motion for Judgment on the Pleadings, or in the alternative, a Motion for Summary Judgment, in which Union Pacific argued that, pursuant to the January 27, 1999, settlement and pursuant to the February 9, 1999, order of dismissal with prejudice, Union Pacific was forever discharged from any and all claims arising out of the March 22, 1996, accident. On August 6, 2002, the circuit court granted Union Pacific's motion and entered an order of dismissal with prejudice.[2]

---

[1] In addition, Alvin Hull filed suit against the driver of the vehicle in which Sharon Hull was riding.

[2] An appeal of the August 6 order was abandoned after plaintiffs' counsel determined that Derrick Cossey, by his father and next friend David Cossey, and Chad Johns were not proper parties to bring suit.

On October 21, 2002, David Cossey, as administrator of the Estate, filed suit against Union Pacific, seeking damages suffered by Derrick Cossey and Chad Johns, as a result of Hull's death. Again, Union Pacific filed a Motion for Judgment on the Pleadings, or in the alternative, a Motion for Summary Judgment. Union Pacific argued that, pursuant to the January 27, 1999, settlement, the February 9, 1999, order of dismissal with prejudice, and the August 6, 2002, order of dismissal, Union Pacific was forever discharged from any and all claims arising out of the March 22, 1996, accident. On January 24, 2003, the circuit court granted Union Pacific's motion and entered an order of dismissal with prejudice.

The Estate appeals the January 24 order, arguing that the circuit court erred in granting Union Pacific's motion for summary judgment, thereby precluding the Estate from pursuing its claim for damages growing out of the death of Hull. Specifically, the Estate argues that *Simmons First National Bank v. Abbot*, 288 Ark. 304, 705 S.W.2d 3 (1986), should be overruled or, at a minimum, modified to allow beneficiaries in the Wrongful Death Act to pursue claims of their own as provided by that Act so long as they do not collect twice for the same damages.

### Cause of Action for Wrongful Death

There was no cause of action for wrongful death at common law. *Babb v. Matlock*, 340 Ark. 263, 9 S.W.3d 508 (2000); *Simmons, supra*; *McGinty v. Ballentine Produce, Inc.*, 241 Ark. 533, 408 S.W.2d 891 (1966). Rather, the rights of a tortiously injured person were extinguished by his or her death. *Simmons, supra*. The wrongful-death action is a statutory creation, and since it is in derogation of or at variance with the common law, we construe the wrongful-death statute strictly. *Babb, supra; Simmons, supra; McGinty, supra*. Strict construction necessarily "requires that nothing be taken as intended that is not clearly expressed." *Babb, supra* (quoting *Lawhon Farm Servs. v. Brown*, 335 Ark. 272, 279, 984 S.W.2d 1, 4 (1998)).

The Wrongful Death statute in effect at the time of Hull's death provided, in part:

> (a)(1) Whenever the death of a person shall be caused by a wrongful act, neglect, or default and the act, neglect, or default is such as would have entitled the party injured to maintain an action and

recover damages in respect thereof, if death had not ensued, then, and in every such case, the person who, or company, or corporation which would have been liable if death had not ensued shall be liable to an action for damages, notwithstanding the death of the person injured, and although the death may have been caused under such circumstances as amount in law to a felony.

(2) The cause of action created in this subsection shall survive the death of the person wrongfully causing the death of another and may be brought, maintained, or revived against the personal representatives of the person wrongfully causing the death of another.

(d) The beneficiaries of the action created in this section are the surviving spouse, children, father and mother, brothers and sisters of the deceased person, persons standing in loco parentis to the deceased person, and persons to whom the deceased stood in loco parentis.

Ark. Code Ann. § 16-62-102 (Supp. 1999).

In *Simmons, supra*, this court held that a suit by an injured party, reduced to final judgment, extinguishes any wrongful-death claim against identical defendants based on identical allegations of fault. The Estate argues that the release executed by Alvin Hull covered only the claims of Sharon Hull, not the claims of her children. The Estate contends that the claims of Hull's children constitute "a completely different cause of action with different claimants and different elements of damage and different proof." Further, the Estate argues:

. . . [T]he Arkansas Wrongful Death Act itself does not really envision or contemplate their claims being extinguished by such proceedings because, by its own terms, it speaks throughout the Act (but most especially in Arkansas Code Annotated 16-62-102(b)) of the personal representative of the *deceased* bringing the action; or in its absence, the *heirs* at law of the *deceased* person.

In that case, imagining a disposition of the estate's claim or an heir's claim is even more farfetched because the decedent, the ones whose *death* would give rise to their claim was not even dead at that time, February, 1999, and, in fact, did not die until December, 1999, some ten to eleven months after the settlement. . . .

In other words, the claims that our Wrongful Death Act beneficiaries were to pursue did not even exist in January and February 1999; nor did the beneficiaries' status i.e. as *surviving* children, as heirs, as personal representatives exist — nor could they. Sharon Leann Hull was not yet dead.

The Estate acknowledges that the decedent was compensated for her injury and contends that it is not asking to be compensated for any damages due the decedent because of the injury done her by Union Pacific's wrongdoing. Rather, the Estate argues that Hull's children should be allowed to present proof of damages that *they* have suffered as a result of the death of their mother — claims which could not have been brought by Hull in her personal injury suit against Union Pacific.

■ However, we have previously stated that a wrongful-death action is derivative[3] in nature. *See, e.g., Simmons, supra; Matthews v. Travelers Indem. Ins. Co.*, 245 Ark. 247, 432 S.W.2d 485 (1968). In *Simmons, supra*, we cited with approval *Hicks v. Missouri Pacific Railroad Co.*, 181 F. Supp. 648 (W.D. Ark. 1960). In *Hicks*, the Western District Court of Arkansas stated:

> Although the right of the next of kin to recover under the Arkansas death statute is not a mere continuation of the original right of the

---

[3] Comment b of section 46 of the Restatement (Second) of Judgments (1982), explains the difference between "derivative" and "independent" claims for wrongful death, stating:

> The claim for wrongful death that arises in favor of the decedent's family, dependents, or representative can be characterized as either "derivative" from the injured person's own claim or "independent" of it. If the claim for wrongful death is treated as wholly "derivative," the beneficiaries of the death action can sue only if the decedent would still be in a position to sue. In this approach, the decedent's action for personal injuries during his lifetime has the same consequences as it does under the survival statute. *See* § 45. Accordingly, settlement of the decedent's personal injury claim or its reduction to judgment for or against the alleged tortfeasor extinguishes the wrongful death claim against that tortfeasor. Similarly, issue preclusion applicable against the decedent is applicable also against the claimant in the wrongful death action. If, on the other hand, the claim for wrongful death is treated as wholly "independent," the decedent's position of his personal injury claim would have no effect on the wrongful death claim. The situation would be as though the injured person and his beneficiaries each had a separate legal interest in his life, assertable by separate action.

decedent, but is a new action in the sense that it arises at a different time, that the beneficiaries are different, and that the measure of damages is different, still it is a derivative action, and, . . . it arises only where the original right of the decedent has been preserved.

*Hicks*, 181 F. Supp. at 653.

■ In *Hicks, supra,* the court held that since the wrongful-death statute was derivative in nature from the original tort, and that since the statute of limitations had run on any tort action for the injured party prior to his death, the statute-of-limitations defense could be imposed in the wrongful-death action. Similarly, in the present case, since the wrongful-death statute is derivative in nature from the original tort, and since the original right of the decedent was settled and thus, no longer preserved, the defense of a prior settlement with the decedent can be imposed by Union Pacific in the wrongful-death action.

Still, the Estate maintains that our holding in *Simmons* must be reconsidered due to this court's misplaced reliance on Lord Campbell's Act. The *Simmons* court stated:

> The survival statutes and wrongful death statutes are based primarily on Lord Campbell's Act, 9 and 10, Vict c, 93, An act for compensating the families of persons killed by accidents (August 26, 1846):
>
> > "Whereas, no action at law is now maintainable against a person who by his wrongful act, neglect or default may have caused the death of another person . . . . Be it therefore enacted . . . . That whensoever the death of a person shall be caused by a wrongful act, neglect or default, and the *act, neglect or default as would (if death had not ensued) have entitled the party injured to maintain an action and recover damages in respect thereof,* then and in every such case, the person who would have been liable if death had not ensued shall be liable to an action for damages, notwithstanding the death of the person injured, and although the death shall have been caused under such circumstances as amount in law to felony.
> >
> > II. And be it enacted, That every such action shall be for the benefit of the wife, husband, parent and child of the person whose death shall have been so caused and shall be brought by and in the name of the executor or administrator of the person deceased; and in every such action the jury may give such

damages as they may think proportionate to the injury resulting from such death to the parties respectively for whom and for whose benefits the action shall be brought . . . .

III.   Provided always, and be it enacted, that not more than one action shall lie for and in respect of the same subject matter of the complaint . . . ." (Italics added)

A comparison of Lord Campbell's Act with that of the Arkansas Act reveals a striking similarity:

"Whenever the death of a person shall be caused by wrongful act, neglect or default, and the *act, neglect, or default is such as would, if death had not ensued, have entitled the party injured to maintain an action and recover damages in respect thereof,* then, and in every such case, the person who, or company, or corporation, which would have been liable if death had not ensued, shall be liable to an action for damages, notwithstanding the death of the person injured, and although the death may have been caused under such circumstances as amount in law to a felony. The cause of action herein created shall survive the death of the person wrongfully causing the death of another and may be brought, maintained or revived against the personal representatives of the persons wrongfully causing the death of another." (Italics Added)

The  Act then states that an action shall be brought in the name of a personal representative of the deceased person or by the heirs at law, and in discussing damages mentions recovery for pecuniary injuries and loss of consortium. Additionally, mental anguish is listed as an element of damage to the spouse and next of kin.

Lord Campbell's act specifically stated that not more than one action would lie for and in respect of the same subject matter of the complaint. This gives credence to the theory that if there has been an action on the subject matter of the complaint . . . then there cannot be a second suit regarding the same subject matter.

*Simmons,* 288 Ark. at 305-07.[4]

---

    [4] In *Mellon v. Goodyear,* 277 U.S. 335, 344 (1928), the United States Supreme Court stated:

■  The Estate argues that since the General Assembly chose not to include in the Arkansas Wrongful Death Act the "one cause of action limitation" that was included in Lord Campbell's Act, then the *Simmons* court should have assumed that the omission was intentional and interpret the Act accordingly. However, we have clearly stated that the General Assembly is presumed to be familiar with this court's interpretation of its statutes, and if it disagrees it can amend the statutes. *Lawhon, supra.* Without such amendments, however, our interpretations of the statutes remain the law. *Id.; Sawyer v. State*, 327 Ark. 421, 938 S.W.2d 843 (1997).

■■  Although aware of our interpretation of the Wrongful Death Act in *Simmons*, where we held that the reduction to final judgment of the injured party's claim for bodily injuries extinguishes any wrongful-death claim against identical defendants based on identical allegations of fault, in subsequent amendments to the Wrongful Death Act, the General Assembly made no changes which would alter our holding in *Simmons*. In addition, this court has stated that when a statute has been construed, and that construction has been consistently followed for many years, such construction ought not be changed. *Morris v. McLemore*, 313 Ark. 53, 852 S.W.2d 135 (1993). As time passes, the interpretation given a statute becomes part of the statute itself. *Id.* Accordingly, we decline the Estate's request that we overrule or modify our holding in *Simmons, supra.*

Affirmed.

---

By the overwhelming weight of judicial authority, where a statute of the nature of Lord Campbell's Act in effect gives a right to recover damages for the benefit of dependents, the remedy depends upon the existence in the decedent at the time of his death a right of action to recover for such injury. A settlement by the wrongdoer with the injured person, in the absence of fraud or mistake, precludes any remedy by the personal representative based on the same wrongful act.