Mary E. MILLER *v.*
CENTERPOINT ENERGY RESOURCE CORPORATION
A/K/A Arkla; Wesley Pierce, Individually; Megan Roberts, Individually; Andy West, Individually; & Dana West, Individually

CA 06-668                                                          250 S.W.3d 574

Court of Appeals of Arkansas
Opinion delivered February 28, 2007

*Niblock & Associates*, by: *Jeremy Bueker*, for appellant.

*Friday, Eldredge & Clark, LLP*, by: *James M. Simpson* and *Martin A. Kasten*, for appellee Centerpoint Energy Resource Corporation.

*Matthews, Sanders & Sayes*, by: *Doralee Chandler* and *Mel Sayes*, for appellees Andy and Dana West.

SAM BIRD, Judge. This appeal is from a wrongful-death action filed by appellant, Mary Miller, to recover from appellees, Centerpoint Energy Resources Corporation (Centerpoint) and Dana and Andy West, for injuries that Mrs. Miller's husband sustained in a gas explosion in a home owned by the Wests on July 9, 2001. The Pulaski County Circuit Court granted Centerpoint's motion to dismiss and the Wests' motion for summary judgment, and

Mrs. Miller has appealed.[1] We reverse and remand the circuit court's order granting Centerpoint's motion to dismiss, and we affirm the circuit court's order granting the Wests' motion for summary judgment.

In early July 2001 Mary and Vincent Miller moved into an apartment being leased by Wesley Pierce and Megan Roberts from the owners, Dana and Andy West. The Millers intended to stay only a few weeks and agreed to pay one hundred dollars a week to Pierce and Roberts. The lease agreement between the Wests and Pierce and Roberts specifically forbade Pierce and Roberts from subletting the premises or any part thereof without the written consent of management. The Wests were never advised that the Millers were moving in, and the Millers never met the Wests. Mrs. Miller discovered a space heater in the bedroom closet when she moved in with Pierce and Roberts. She said that Pierce and Roberts told her that the space heater was disconnected when they moved in, so they put it in a closet. She learned after the accident that they had placed an entertainment center in front of the uncapped gas line. On July 9, 2001, a week after the Millers moved in, an explosion occurred, allegedly due to a gas leak from the uncapped gas line, severely burning both of the Millers. Mr. Miller died from his injuries on July 22, 2001.

On July 21, 2004, Mrs. Miller, individually and as special administrator of the estate of Vincent Miller, filed a survival claim and a wrongful-death claim against Centerpoint, the Wests, and additional defendants who are no longer in the case. *See Miller I, infra* n.2. Centerpoint filed a motion to dismiss, alleging that both the survival and wrongful-death claims were barred by the statute of limitations. The circuit court granted Centerpoint's motion on January 18, 2005. Mrs. Miller appeals the court's order.

On January 27, 2005, the Wests filed a motion for summary judgment, alleging that Mrs. Miller's claims were barred by the statute of limitations and that she could not establish breach of any duty owed by the Wests to Mr. Miller. The Wests attached a copy of the lease and a portion of Mrs. Miller's deposition in support of their motion. Mrs. Miller filed a response and brief, arguing that

---

[1] *See Miller v. Centerpoint Energy Res. Corp.*, CA 05-841 (Ark. App. Mar. 1, 2006) (*Miller I*) (dismissing appeal for lack of final order). On remand, the circuit court dismissed all defendants except Centerpoint and the Wests and issued a certificate pursuant to Ark. R. Civ. P. 54(b). Mrs. Miller brought this appeal.

there were sufficient facts alleged in the complaint to take the matter to a jury. She did not attach any exhibits to her response. The circuit court held a hearing on March 31, 2005. On April 8, 2005, the circuit court entered an order granting the Wests' motion for summary judgment and dismissing Mrs. Miller's complaint against the Wests, holding that Mrs. Miller's claims were barred by the statute of limitations, that Mr. Miller was a licensee on the Wests' premises, that the Wests did not breach any duty allegedly owed to Mr. Miller, and that there was no genuine issue of fact remaining to be decided. Mrs. Miller appeals from this order.

## Centerpoint's Motion to Dismiss

For her first point on appeal, Mrs. Miller argues that the trial court erred in dismissing her wrongful-death claim against Centerpoint.[2] When reviewing a circuit court's decision on a motion to dismiss, the facts alleged in the complaint are treated as true and are reviewed in the light most favorable to the plaintiff. *Goff v. Harold Ives Trucking Co.*, 342 Ark. 143, 27 S.W.3d 387 (2000). In order to prevail on a motion to dismiss on the basis of limitations, the complaint must be barred on its face. *Filyaw v. Bouton*, 87 Ark. App. 320, 323-24, 191 S.W.3d 540, 542 (2004). The parties agree that this point on appeal presents purely a question of law and that the appropriate standard of review is therefore de novo. *See Sanford v. Sanford*, 355 Ark. 274, 137 S.W.3d 391 (2003) (finding that a trial court's conclusion on a question of law is given no deference on appeal).

We turn first to the statute governing wrongful-death claims. It states that "[e]very action authorized by this section shall be commenced *within three (3) years after the death* of the person alleged to have been wrongfully killed." Ark. Code Ann. § 16-62-102(c)(1) (Repl. 2005) (emphasis added). Vincent Miller died on July 22, 2001. Mrs. Miller filed a complaint for wrongful death on July 21, 2004, within three years after the death of Mr. Miller. Centerpoint argued in its motion to dismiss, and the circuit court held, that Mrs. Miller's wrongful-death claim was derivative of the

---

[2] Mrs. Miller's complaint against Centerpoint alleged both a wrongful-death claim and a survival claim. Centerpoint's motion requested a dismissal of both claims, and the circuit court's order granted the motion. We note that Mrs. Miller appeals only the dismissal of her wrongful-death claim but does not appeal the decision dismissing her survival claim.

survival claim, which expired on July 9, 2004, three years from the date of the accident. *See O'Mara v. Dykema*, 328 Ark. 310, 942 S.W.2d 854 (1997); *Smith v. Missouri Pac. R.R. Co.*, 175 Ark. 626, 1 S.W.2d 48 (1927). Mrs. Miller claims that the circuit court misapplied the Arkansas case law on this issue and that we should reverse its decision. We agree and reverse.

A brief overview of the difference between a wrongful-death claim and a survival claim is helpful in this case. There are two causes of action that arise when a person's death is caused by the negligence of another: (1) a cause of action for the estate under the survival statute, Ark. Code Ann. § 16-62-101, and (2) a cause of action for the statutory beneficiaries under the wrongful-death statute, Ark. Code Ann. § 16-62-102. *Meredith v. Buchman*, 101 F. Supp. 2d 764 (E.D. Ark. 2000)(citing *Matthews v. Travelers Indem. Ins. Co.*, 245 Ark. 247, 432 S.W.2d 485 (1968)). "An action for wrongful death brought by a plaintiff in his capacity as an administrator pursuant to Ark. Code Ann. § 16-62-102 involves neither the same action, nor the same plaintiff as in a survival action brought by the same person in his individual capacity pursuant to Ark. Code Ann. § 16-62-101." *St. Paul Mercury Ins. Co. v. Cir. Ct. of Craighead County*, 348 Ark. 197, 205, 73 S.W.3d 584, 589 (2002). A survival claim is simply a claim by the injured party that would have ended upon his death at common law. The legislature enacted a survival statute allowing those claims to survive the injured party's death. *See Myers v. McAdams*, 366 Ark. 435, 236 S.W.3d 504 (2006).

In *Matthews v. Travelers Indemnity Insurance Co.*, 245 Ark. 247, 250, 432 S.W.2d 485, 488 (1968), the supreme court indicated that a claim for wrongful death is to some extent derivative of a survival action in that "it [a wrongful-death claim] may be extinguished either by a suit for personal injuries prosecuted by the injured person to a final judgment during his lifetime" or "by the running of the applicable statute of limitations during the injured person's lifetime." In *Matthews*, the decedent's husband brought two separate causes of action for medical malpractice against the defendant: a survival action on behalf of his wife for the physical and mental anguish suffered by her before her death and a wrongful-death action for his own loss of consortium and mental anguish. The supreme court held that, while the survival claim was barred by the two-year malpractice statute of limitations, the

wrongful-death claim was not barred as it was brought within three years of the death of the injured party.[3]

In *Estate of Hull v. Union Pacific Railroad Co.*, 355 Ark. 547, 141 S.W.3d 356 (2004), the supreme court dismissed a wrongful-death suit, holding that settlement with the defendant of the decedent's lawsuit extinguished the wrongful-death claim against the same defendant. In *Estate of Hull*, Sharon Hull was a passenger in a car that was involved in an accident in 1996 with a train operated by Union Pacific. Ms. Hull's guardian settled with Union Pacific and released all liability and claims related to the accident. After Ms. Hull's death in 1999, the trial court dismissed a wrongful-death suit filed by her estate, holding that the 1996 settlement and release barred any future suit. The supreme court stated that a "suit by an injured party, *reduced to a final judgment*, extinguishes any wrongful death claim against identical defendants based on identical allegations of fault." *Id*. at 551, 141 S.W.3d at 358 (emphasis added). The court said that because "the wrongful-death statute is derivative in nature from the original tort, and since the original right of the decedent was settled and thus, no longer preserved, the defense of a prior settlement with the decedent can be imposed by Union Pacific in the wrongful-death action." *Id*. at 553, 141 S.W.3d at 360.

Finally, in *Brown v. Pine Bluff Nursing Home*, 359 Ark. 471, 199 S.W.3d 45 (2004), the most recent case in which the supreme court has addressed the derivative nature of a wrongful-death claim, the court upheld the trial court's dismissal of a wrongful-death claim because it was derivative of the decedent's negligence action. In *Brown*, a seventy-two-year-old man, Ed Thomas, wandered away from his nursing home on January 24, 1998, and was never found. On September 14, 2000, Thomas's daughter and guardian, Edna Thomas Brown, filed a negligence suit against the nursing home, which she voluntarily dismissed on July 9, 2001. Less than a year later, Brown filed a second negligence suit, which was dismissed for failure to properly serve the complaint. On May 1, 2003, Thomas was declared to be deceased, and Brown, as the personal representative, filed a wrongful-death claim. In affirming the trial court's dismissal of the wrongful-death claim, the supreme

---

[3] We recognize that the statute of limitations for any medical injury, even one resulting in the death of a person, is now governed by the Medical Malpractice Act and not the wrongful-death statute. *See, e.g., Pastchol v. St. Paul Fire & Marine Ins. Co.*, 326 Ark. 140, 144, 929 S.W.2d 713, 715 (1996).

court noted that the dismissal of Brown's second negligence suit amounted to a final judgment. *Id.* at 474, 199 S.W.3d at 47. The court reasoned that, because the second negligence action had been dismissed with prejudice, Thomas would have been barred by res judicata from bringing another negligence lawsuit stemming from the same acts had he survived. The court said that, because the negligence alleged in Brown's first and second suits also formed the basis for her wrongful-death cause of action, Brown was barred from bringing the wrongful-death action. *Id.* at 475–76, 199 S.W.3d at 48–49. The court made it clear that it was not holding that the wrongful-death action was barred by the statute of limitations: "Had there not been a dismissal with prejudice of the underlying negligence action, and had Brown simply waited to file the wrongful death complaint after obtaining the declaration of death from the probate court, her action would have been timely, as a wrongful death action does not arise until the date of death." *Id.* at 476 n.2, 199 S.W.3d at 48 n.2.

■ In the case before us, because no negligence action was filed by or on behalf of Mr. Miller before Mrs. Miller filed a wrongful-death action, there was no final judgment or settlement by the decedent that extinguished Mrs. Miller's wrongful-death claim. Mrs. Miller brought a wrongful-death claim within three years after the death of Mr. Miller as required by Ark. Code Ann. § 16-62-102(c)(1) (Repl. 2005). Therefore, we reverse the circuit court's order dismissing this claim.

### *The Wests' Motion for Summary Judgment*

For her second point on appeal, Mrs. Miller argues that the circuit court erred in granting the Wests' motion for summary judgment on her wrongful-death claim. The circuit court granted the Wests' motion for two reasons: (1) the claim was barred by the statute of limitations and (2) there were no genuine issues of material fact. We hold that the circuit court erred with respect to the statute of limitations for the reasons stated above, but we affirm the circuit court's decision granting summary judgment because there were no genuine issues of material fact to be litigated on the issue of the Wests' alleged willful and wanton conduct.

Summary judgment should be granted only when it is clear that there are no genuine issues of material fact to be litigated, and the party is entitled to judgment as a matter of law. *Riverdale Dev. Co. v. Ruffin Bldg. Sys. Inc.*, 356 Ark. 90, 95, 146 S.W.3d 852, 854

(2004). The burden of sustaining a motion for summary judgment is the responsibility of the moving party. *Pugh v. Griggs*, 327 Ark. 577, 581, 940 S.W.2d 445, 447 (1997). Once the moving party has established a prima facie entitlement to summary judgment, the non-moving party must meet proof with proof and demonstrate the existence of a material issue of fact. *Id*. On appellate review, we determine if summary judgment was appropriate based on whether the evidence presented by the moving party in support of its motion leaves a material fact unanswered. *George v. Jefferson Hosp. Ass'n, Inc.*, 337 Ark. 206, 210, 987 S.W.2d 710, 711 (1999). We view the evidence in the light most favorable to the non-moving party, resolving all doubts and inferences against the moving party. *Id*.

Mrs. Miller argues that the circuit court erred in granting the Wests' motion for summary judgment because the Wests did not meet their burden of proof regarding whether there was evidence that their conduct was willful and wanton. The Wests claim that Mrs. Miller offered *no* proof that the Wests' conduct was willful and wanton and ask us to affirm the order of the circuit court.

The parties agree that Mr. Miller was a licensee in the apartment and that under Arkansas law a property owner owes a licensee no duty unless his presence on the premises is known or reasonably should be known. *See MIC v. Barrett*, 313 Ark. 527, 531, 855 S.W.2d 326, 328–29 (1993). Once the property owner is aware of the presence of a licensee on his property, he must refrain from injuring him or her through willful or wanton conduct. *Turner v. Stewart*, 330 Ark. 134, 141, 952 S.W.2d 156, 160 (1997). To constitute willful or wanton conduct, there must be a course of action which shows a deliberate intent to harm or utter indifference to, or conscious disregard of, the safety of others. *Id*.

■ With these principles in mind, we turn to the facts of this case. In order for the Wests to have had any duty at all to the Millers, who were licensees in an apartment owned by the Wests, the Millers' presence at the apartment either must have been known or reasonably should have been known to the Wests. The Wests alleged that they were unaware of the Millers' presence at the apartment. In her deposition, Mrs. Miller testified that she never met the Wests but merely saw Mr. West from a distance because he owned a glass company near the apartment. Mrs. Miller presented no additional evidence or testimony that the Wests knew, or should have known, that the Millers were living in the apartment.

■ However, even if the Wests knew or should have known that the Millers were staying in the apartment, Mrs. Miller presented no evidence that they injured the Millers through willful or wanton conduct. She merely argues that renting an apartment with an uncapped gase line can rise to the level of willful and wanton conduct. The Wests claim that, as they had relinquished control of the apartment to Pierce and Roberts, they had no reason to enter the apartment and no way of knowing of the open valve on the gas line. The gas line had a shut-off valve, which they presumed was shut off. The Wests attached a copy of the lease to their motion for summary judgment, which contained no provision for repairs, including repairs to the gas line or space heater. *See Thomas v. Stewart*, 347 Ark. 33, 38, 60 S.W.3d 415, 418 (2001) (holding that a landlord has no duty to repair leased premises and, in the absence of an agreement with the tenant to repair the leased premises, he cannot be held liable for repairs). Mrs. Miller testified that Pierce and Roberts told her that they moved the space heater into the closet and placed an entertainment center in front of the gas line. Finally, the Wests argue that leasing an apartment with an uncapped gas line equipped with a shut-off valve does not establish "a course of action which shows a deliberate intent to harm or utter indifference to, or conscious disregard of, the safety of others." *See Turner*, 330 Ark. at 141, 952 S.W.2d at 160. They claim, and we agree, that Mrs. Miller failed to provide any proof of willful or wanton conduct beyond her unsupported allegations.

■ When the circuit court noted at the hearing the absence of any proof to support Mrs. Miller's allegations of willful or wanton conduct, Mrs. Miller's attorney told the court that he intended to depose Pierce, Roberts, and the Wests to obtain this evidence. The law requires the non-moving party to meet proof with proof and demonstrate the existence of a material issue of fact once the moving party has established a prima facie entitlement to summary judgment. *Pugh*, 327 Ark. at 581, 940 S.W.2d at 447. Rule 56 of the Arkansas Rules of Civil Procedure provides very definite time periods within which this proof must be presented. *See* Ark. R. Civ. P. 56(c) (2006). Absent an order of the court enlarging these time periods — which did not occur here — a party must present its proof within the time restrictions imposed by Rule 56. We agree with the circuit court that, in this case, presentation of proof after the hearing on the motion would have been too late. Mrs. Miller failed to present any proof at the hearing.

Therefore, we affirm the circuit court's decision granting the Wests' motion for summary judgment.

In conclusion, we reverse and remand the circuit court's order granting Centerpoint's motion to dismiss, and we affirm the circuit court's order granting the Wests' motion for summary judgment.

GLADWIN, ROBBINS, GLOVER, BAKER, and MILLER, JJ., agree.