In re ZYPREXA PRODUCTS LIABILITY LITIGATION.

The Estate of Donna L. Smith, Plaintiff,

v.

Eli Lilly & Company, Defendant.

Nos. 04–MD–1596 (JBW), 05–CV–5305 (JBW).

United States District Court, E.D. New York.

July 21, 2009.

Anthony Chu, Capretz & Associates, Don K. Ledgard, James T. Capretz, Newport Beach, CA, C. Burt Newell, Bachelor & Newell, Hot Springs, AR, for Plaintiff.

Andrew R. Rogoff, Matthew J. Hamilton, Nina M. Gussack, Pepper Hamilton LLP, Philadelphia, PA, Samuel J. Abate, Jr., Pepper Hamilton LLP, New York, NY, for Defendant.

## MEMORANDUM, ORDER AND JUDGMENT ON RECONSIDERATION

JACK B. WEINSTEIN, Senior District Judge.

### I. Introduction

Plaintiff moves for reconsideration of the court's May 21, 2009 grant of summary judgment to defendant Eli Lilly & Company ("Lilly"). Argument on the motion was heard on July 7, 2009. Plaintiffs claims against Lilly include negligence, strict products liability, failure to warn, breach of implied and express warranty, fraud and misrepresentation, and wrongful death.

The motion for reconsideration is granted. Insofar as the order and judgment were based on the running of the statute of limitations, that ground is withdrawn. Summary judgment is now granted solely on lack of causation.

### II. Standard for Motion for Reconsideration

Fed.R.Civ.P. 59(e) provides that "a motion to alter or amend a judgment must be filed no later than 10 days after the entry of the judgment." Local Civil Rule 6.3 requires that "a motion for reconsideration or reargument of a court order determining a motion shall be served within ten (10) days after the entry of the court's determination of the original motion." "Essentially the same standard is used to determine Rule 59(e) motions as motions under ... Local Rule [6.3]." *T.Z. v. City of New York*, No. 05–CV–5111, 2009 WL 1794702, at *2 (E.D.N.Y. June 23, 2009).

"The standard for granting ... a motion [for reconsideration] is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked [-]-matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transp. Inc.*, 70 F.3d 255, 257 (2d Cir.1995) (citing *Schonberger v. Serchuk*, 742 F.Supp. 108, 119 (S.D.N.Y. 1990)); *Adams v. United States*, 686 F.Supp. 417, 418 (S.D.N.Y.1988). An attempt to simply relitigate an issue that was already decided will not be granted reconsideration. *Wall v. Constr. & Gen. Laborers' Union, Local 230*, No. 06–CV–1264, 2009 WL 230122, at *1 (2d Cir. Feb. 2, 2009) (citing *Shrader*, 70 F.3d at 257).

There are generally three grounds for reconsideration: (1) an intervening change in the law, (2) the availability of evidence not previously available, and (3) the need to correct a clear error or prevent manifest injustice. *Doe v. N.Y.C. Dep't of Soc. Servs.*, 709 F.2d 782, 789 (2d Cir.1983). This order is based on the third.

## III.  Facts

Facts relevant to Lilly's motion for summary judgment are set forth in the court's memorandum, order and judgment of May 21, 2009.  They are deemed included in the present document.

## IV.  Statute of Limitations

■ When the death of a person is caused by a wrongful act suit must be brought by the estate within three years *after the death* of the person.  Ark.Code Ann. § 16–62–102(c)(1) (1987).  A wrongful death action is barred where a personal injury claim relating to the same alleged tortious conduct was time-barred at the time of decedent's death.  A decedent must have "a cause of action which he could have maintained at the time of his death. . . .  [I]f the decedent's personal claim is barred at the time of his death, no action can be maintained by his beneficiaries under the [wrongful] death statute." *Hicks v. Missouri P. R. Co.*, 181 F.Supp. 648, 653 (W.D.Ark.1960).  *See also Myers v. McAdams*, 366 Ark. 435, 236 S.W.3d 504, 504–506 (2006) (finding that a wrongful death action that commenced soon after decedent's death was time-barred "because the wrongful death claim pertaining to the deceased . . . was not filed originally until . . . over ten years after the alleged medical injury"); *Estate of Hull v. Union Pac. R.R.*, 355 Ark. 547, 141 S.W.3d 356, 359–60 (2004) ("[S]ince the wrongful death statute [is] derivative in nature from the original tort . . . [if] the statute of limitations . . . run[s] on any original tort action for the injured party prior to his death, the statute of limitations defense c[an] be imposed in the wrongful death action."). *But see Brown v. Pine Bluff Nursing Home*, 359 Ark. 471, 199 S.W.3d 45, 49 (2004) (dicta: a wrongful death action that was otherwise barred "would have been timely, as a wrongful death action does not arise until

the date of the death"); *Miller v. Centerpoint Energy Res. Corp.*, 98 Ark. App. 102, 250 S.W.3d 574, 579 (2007) (suggesting that a wrongful death action stemming from a pre-death injury is timely when brought within three years of the death if the decedent's tort action was not time-barred at the time of death).  The wrongful death statute as it existed when *Hicks* was decided is substantively identical to the wrongful death statute presently in force.  *Compare* Ark. Stats. § 27–906 (1957) *with* Ark.Code Ann. § 16–62–102(c)(1) (1987).

In the present action, the decedent's personal injury claim would arguably not have been time-barred at the time of her death and the action was brought less than three years after death.  On reconsideration, summary judgment is not entered on statute of limitations grounds.

## V.  Causation

■ The court reaffirms its Findings as to lack of causation with respect to the alleged failure to warn.  Under Arkansas state tort law, the plaintiff must establish that: 1) an inadequate warning was given; 2) the inadequacy of the warning caused the prescription to be provided; and 3) the inadequate warning caused the alleged injury. *Rush v. Wyeth (In re Prempro Prods. Liab. Litig.)*, 514 F.3d 825, 830 (8th Cir.2008) (applying Arkansas law).

■ The learned intermediary doctrine is relevant in evaluating the second element of this analysis.  The doctrine provides that "a physician acts as a learned intermediary between a pharmaceutical manufacturer and the physician's patient.  As such, a warning to the physician is deemed a warning to the patient." *Rush*, 514 F.3d at 830.

■ Dr. Pearce first prescribed Zyprexa to Smith.  Def. SUF, Ex. 6, at

SMITHD_NAHSS_0108. Dr. Goatcher testified that Zyprexa was an appropriate prescription choice because Smith was "in crisis with delusions, hallucinations and . . . severe paranoia," and suffered from bipolar disorder with borderline personality and suicidal ideations. *Id.*, Ex. 2, at 58–61. Dr. Pearce recorded in a medical progress report dated September 18, 2000 that "Zyprexa is good [and] calmed her down." *Id.*, Ex. 6, at SMITHD_NAHSS_0118–19. Though the record is not explicit as to whether Dr. Pearce knew of Zyprexa's risks while treating Smith, there is no evidence that Dr. Pearce would have recommended and prescribed an alternative drug instead of Zyprexa had the defendant provided a different warning.

Dr. Goatcher's testimony indicates that no further notification of risks by Lilly would have changed her decision to prescribe Zyprexa. Knowing that Smith had been diagnosed with diabetes and aware of the drug's risks, Dr. Goatcher decided to continue Smith on a Zyprexa regimen. *Id.*, Ex. 2, at 74–75; *Id.*, Ex. 2, at 27; Goatcher Decl., ¶¶ 3–6; Def. SUF, Ex. 9, at 67. Dr. Goatcher maintained the Zyprexa prescription for Smith because it appeared to provide her substantial benefit, because Smith asked to stay on the medication, and because her weight had not changed during treatment. *Id.*, Ex. 2, at 67–68, 88–89. When asked about the decision to maintain Zyprexa therapy, given what she knows now about its risks, Dr. Goatcher refused to state that she would have altered her prescribing decision. *Id.*, Ex. 2, at 66, 82–83.

Whether the doctors actually had knowledge of Zyprexa's detailed risks at the time they prescribed it, acting in their patient's best interest, they would have made the same prescribing decision. No different warning would have changed their medical decision. Any deficiency in Lilly's warning was not the cause of weight gain, diabetes, or the death of Donna L. Smith.

## VI. Conclusion

Upon reconsideration, the court declines to base its decision on operation of Arkansas' statute of limitations. Plaintiff nevertheless cannot establish causation. No reasonable juror could find that any alleged inadequacy of Lilly's warning proximately caused plaintiff harm.

Summary judgment for Lilly is granted. The complaint is dismissed. No costs or disbursements.

SO ORDERED.